[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 12-16337

D.C. Docket No. 1:12-cr-20071-PAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCISCO CUBERO,

Defendant-Appellant.

Appeal from the United States District Court for
the Southern District of Florida

(June 11, 2014)

Before HULL, COX and FARRIS,[*] Circuit Judges.

HULL, Circuit Judge:

---

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Defendant Francisco Cubero appeals his 151-month sentence and his life-term of supervised release imposed after he pled guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and two counts of possession of child pornography, in violation of § 2252(a)(4)(B) and (b)(2).  On appeal, Cubero argues that his sentence and supervised release term are procedurally and substantively unreasonable.

After review of the record and the briefs of the parties, and having the benefit of oral argument, we affirm.

## I.  BACKGROUND

### A.    Cubero's Guilty Plea

On June 1, 2012, Cubero pleaded guilty to one count of distributing and two counts of possessing child pornography.  In his factual proffer, Cubero admitted (1) he used a peer-to-peer file-sharing network on his home computer to download and view child pornography; (2) he used the search term "PTHC"[1] to search for files on the peer-to-peer network, knowing that the term was associated with child pornography; (3) he had a CD-Rom disc containing child pornography files; (4) he placed some of his child pornography files in a "shared" folder on his computer that enabled other people to access the files; (5) law enforcement personnel

---

[1]PTHC is an acronym for "pre-teen hard core" pornography.

downloaded seventeen child pornography files from his computer because he shared the files through the peer-to-peer software; and (6) an examination of his computer revealed images depicting, inter alia, infant, pre-pubescent minor children, and pre-teens being orally, anally, and/or vaginally penetrated or otherwise sexually molested by adults.

For the distribution count, the statutory minimum and maximum terms of imprisonment were 60 months and 240 months, respectively.  See 18 U.S.C. § 2252(b)(1).  For the possession counts, there was no statutory minimum penalty, and the statutory maximum term of imprisonment was 120 months.  See id.

## B.    District Court's Guidelines Calculations

At sentencing on November 21, 2012, the district court calculated a base offense level of 22 for "trafficking in material involving the sexual exploitation of a minor."  U.S.S.G. § 2G2.2(a)(2).

The district court increased Cubero's offense level by

(1)  two levels for trafficking in materials involving minors under twelve years of age, id. § 2G2.2(b)(2);

(2)  two levels for distributing child pornography, id. § 2G2.2(b)(3)(F);

(3)  four levels because the images portrayed sadistic, masochistic, or other violent conduct, id. § 2G2.2(b)(4);

(4)  two levels because Cubero used a computer in committing his crimes, id. § 2G2.2(b)(6);

3

(5) five levels because the offense involved at least 600 images of child pornography, id. § 2G2.2(b)(7)(D).

The district court then reduced Cubero's offense level by three levels for acceptance of responsibility.  Id. § 3E1.1(a), (b).

When totaled, Cubero had an offense level of 34 and a criminal history category of I.  This yielded a guidelines range of 151 months to 188 months of imprisonment.

## C.    Cubero's Objections

Cubero filed written objections, and made oral objections at his sentencing hearing, related to the application of the two-level "distribution" increase under U.S.S.G. § 2G2.2(b)(3)(F) and the failure to apply a two-level decrease pursuant to U.S.S.G. § 2G2.2(b)(1).  Cubero also argued for a downward variance to the statutory mandatory minimum sentence of 60 months in prison.

In addition to his objections and request for a variance, Cubero filed a written statement in which he accepted responsibility and nearly two dozen character letters written by family members and friends.  Cubero also filed reports from two mental health professionals related to his mental health and likelihood of recidivism.

4

**D.     Cubero's Sentence**

The district court considered Cubero's filings and arguments but, ultimately, overruled Cubero's objections and declined to vary below the low end of the advisory guidelines range.

The district court then sentenced Cubero to 151 months in prison—the bottom of the guidelines range—to be followed by a life term of supervised release.  To be more precise, the district court sentenced Cubero to 151 months in prison on the child pornography distribution count and 120 months in prison (the statutory maximum) on each of the two child pornography possession counts.  The district court ordered that these three sentences run concurrently.

## II.  LEGAL PRINCIPLES

**A.     Sentencing Guidelines Determinations**

We review for clear error the district court's factual findings.  United States v. Zaldivar, 615 F.3d 1346, 1350 (11th Cir. 2010).  We review de novo the district court's legal interpretation of the sentencing guidelines, including rejection of double counting challenges.  Id.; United States v. Dudley, 463 F.3d 1221, 1225–26 (11th Cir. 2006) (double counting).  We review de novo the district court's application of the sentencing guidelines to the facts.  Zaldivar, 615 F.3d at 1350.

5

The government bears the burden of proving the applicability of a sentencing guidelines increase, while the defendant bears the burden of proving the applicability of a sentencing guidelines reduction. United States v. Belfast, 611 F.3d 783, 823 (11th Cir. 2010); Zaldivar, 615 F.3d at 1352.

**B.    Reasonableness of the Sentence**

"We review the reasonableness of a sentence for abuse of discretion using a two-step process." United States v. Tuner, 626 F.3d 566, 573 (11th Cir. 2010). First, we look at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances and in light of the § 3553(a) factors. Id.

When deciding upon a sentence, the district court must evaluate all of the § 3553(a) factors but can attach "great weight" to one factor over others.[2] United

---

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the

6

States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (quotation marks omitted). "[A] district court has 'considerable discretion' in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." Id. at 1238 (quoting United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008)).  We give that decision "due deference" because the district court has an "institutional advantage" in making sentencing determinations.  Id. (quotation marks omitted); see also United States v. Alfaro-Moncada, 607 F.3d 720, 735 (11th Cir. 2010). "We may vacate a sentence only 'if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (quoting Shaw, 560 F.3d at 1238) (additional quotation marks omitted).

On appeal, the party challenging the sentence bears the burden to show that it is unreasonable.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

---

Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

### III.  PROCEDURAL REASONABLENESS

**A.      Relevant Statutory and Guidelines Provisions**

Pursuant to 18 U.S.C. § 2252(a)(2), it is unlawful to "knowingly receive[],

or distribute[], any visual depiction [of child pornography] . . . by any means

including by computer," or to "knowingly reproduce[] any [such] visual depiction

for distribution."  18 U.S.C. § 2252(a)(2) (emphasis added).

Relevant here, the sentencing guidelines for a violation of § 2252(a)(2) call

for a base offense level of 22.  U.S.S.G. § 2G2.2(a)(2).[3]  And, the guidelines call

for a two-level increase if the defendant distributed child pornography.[4]  Id.

§ 2G2.2(b)(3)(F).

---

[3]Guideline § 2G2.2 applies to defendants convicted of the myriad offenses proscribed by 18 U.S.C. §§ 1466A, 2251(d)(1)(A), 2252, 2252A(a) and (b), and 2260(b).  See United States Sentencing Commission, Guidelines Manual, Appendix A.

[4]The sentencing guidelines application notes define "distribution" as:

> [A]ny act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor.  Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2, cmt. n.1.

8

**B.     Cubero's Double Counting Argument**

Cubero asserts that " 'distribution' is an essential element of [Cubero's] § 2252(a)(2) offense" and, thus, was "taken into account in calculating Cubero's base offense [level] under [U.S.S.G.] § 2G2.2."  Cubero also asserts that the two-level sentencing increase contemplated by U.S.S.G. § 2G2.2(b)(3)(F) does "not concern a conceptually separate notion related to sentencing" (emphasis and quotation marks omitted).  Putting these arguments together, Cubero asserts that—because both the base offense level in § 2G2.2(a)(2) and the two-level increase in § 2G2.2(b)(3)(F) cover the act of "distribution"—the two-level increase in § 2G2.2(b)(3)(F) constitutes impermissible double counting.

Cubero's logic is flawed.  Although Cubero correctly notes that he was adjudicated guilty for knowingly distributing child pornography in violation of 18 U.S.C. § 2252(a)(2), he incorrectly asserts that the only way to violate § 2252(a)(2) is to knowingly distribute child pornography.  One can also violate that provision by knowingly receiving or reproducing child pornography.  See 18 U.S.C. § 2252(a)(2); see also United States v. Reingold, 731 F.3d 204, 227 (2d Cir. 2013) (noting that "distribution need not be present in every conviction under [§ 2252(a)(2)]" because § 2252(a)(2) "proscribes the knowing receipt or distribution of child pornography").

9

Therefore, Cubero is incorrect in stating that " 'distribution' is an essential element of [Cubero's] § 2252(a)(2) offense" (emphasis added).  To the contrary, distribution is not required to violate § 2252(a)(2).

With that in mind, it is readily apparent that the base offense level in U.S.S.G. § 2G2.2(a)(2) covers multiple possible violations of 18 U.S.C. § 2252(a)(2):  knowing distribution, knowing receipt, and/or knowing reproduction of child pornography.  And, when a defendant performs the first type of unlawful § 2252(a)(2) conduct (i.e., knowingly distributing child pornography), the Sentencing Commission found it appropriate to add two offense levels to the base offense level.  See U.S.S.G. § 2G2.2(b)(3)(F).[5]

The Sentencing Commission acted within its authority when it concluded that the sentencing guidelines should differentiate between the potential harm caused by receipt and distribution—two very different types of conduct—by providing a two-level increase when a defendant distributes, rather than simply receives, child pornography.

---

[5]The Sentencing Commission increased the offense levels even more for more heinous variations of distribution.  See, e.g., U.S.S.G. § 2G2.2(b)(3)(C) (adding five levels for distributing child pornography to a minor); id. § 2G2.2(b)(3)(E) (adding seven levels for distributing child pornography to a minor in an attempt to persuade that minor to engage in unlawful sexual conduct).

In so doing, the Sentencing Commission did not create guidelines with impermissible double counting.  Instead, the Sentencing Commission did what it was supposed to do:  create categories of offense behavior and offender characteristics to reduce disparity in sentencing.  Accord United States v. Irey, 612 F.3d 1160, 1181 (11th Cir. 2010) (en banc); United States Sentencing Commission, Guidelines Manual, ch. 1, pt. A, at 1-2.

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  United States v. Dudley, 463 F.3d 1221, 1226–27 (11th Cir. 2006) (quotation marks omitted).  That did not occur here.  To the contrary, Cubero's act of distribution was not "fully accounted for" by application of the base offense level.  For that reason, the Sentencing Commission found it appropriate to give a two-level "distribution" increase to distinguish Cubero's distribution conduct from conduct that does not involve the distribution of child pornography.  Id. at 1226–27 ("Double counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." (quotation marks omitted) (alterations adopted)).

11

Moreover, "[w]e presume that the Sentencing Commission intended separate guidelines sections to apply cumulatively, unless specifically directed otherwise." Id. at 1227 (quotation marks omitted). Here, there is every indication that the Sentencing Commission intended each applicable provision of U.S.S.G. § 2G2.2 to apply cumulatively.

As an initial matter, guideline § 2G2.2 sweeps broadly to address a wide range of criminal conduct that occurs after child pornography has been produced. As the guideline's title indicates, it covers (1) trafficking; (2) receiving; (3) transporting; (4) shipping; (5) soliciting; (6) advertising; and (7) possessing child pornography, both with and without intent to distribute.

To help sentencing courts differentiate the harm caused by such crimes, § 2G2.2 draws many distinctions based on the defendant's conduct. See United States v. Reingold, 731 F.3d 204, 227 (2d Cir. 2013). First, the guidelines set a lower base offense level for simple possession than it does for the other crimes covered by the guideline. See U.S.S.G. § 2G2.2(a). Second, the guidelines increase or decrease the offense level based on other relevant conduct. For example, the guidelines modify the offense level when (1) the defendant's conduct was limited to receipt or solicitation; (2) the pornography involved a child younger than 12 years old; (3) the act involved distribution; (4) the defendant possessed,

12

solicited, or distributed many hundreds of images rather than a few images; (5) the defendant's conduct was part of a pattern; (6) the defendant used a computer to commit his crime; and (7) the images portrayed sadistic, masochistic, or violent conduct. See id. § 2G2.2(b).

Given the guidelines' structure, it is implausible that the Sentencing Commission intended the base offense level to completely capture all of the possible harm associated with distributing child pornography. Rather, guideline § 2G2.2 is structured so that the range of harms associated with child pornography distribution can be addressed through various offense level increases and decreases. See Reingold, 731 F.3d at 228; United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir.) cert. denied, 133 S. Ct. 589 (U.S. 2012) ("Viewed against this chiaroscuro backdrop, it is apparent that the sentencing guidelines broadly cover all child pornography offenses and use the offense level spread and subsequent adjustments to reach appropriate benchmarks for different permutations of possession, solicitation, and distribution."). Thus, the offense level increase found in U.S.S.G. § 2G2.2(b)(3)(F) applies cumulatively, and the district court did not abuse its discretion in applying it here.

For all these reasons, the district court did not err in increasing Cubero's guidelines range two levels pursuant to U.S.S.G. § 2G2.2(b)(3)(F).

13

**C.    Cubero's Guidelines Reduction Argument**

The sentencing guidelines for child pornography provide for a two-level decrease if (1) "the defendant's conduct was limited to the receipt or solicitation of [child pornography]" and (2) "the defendant did not intend to traffic in, or distribute, such material."  U.S.S.G. § 2G2.2(b)(1).  Cubero argues that he was entitled to the benefit of this provision.  He was not.

Cubero pled guilty to knowingly distributing child pornography.  He admitted that he used a peer-to-peer file-sharing network to obtain hundreds of images, some of which he elected to make available to other users.  These facts preclude Cubero's argument that he meets either relevant element of U.S.S.G. § 2G2.2(b)(1).  See id. § 2G2.2 cmt. n.1 ("[D]istribution includes posting material involving the sexual exploitation of a minor on a website for public viewing . . . ."); United States v. Spriggs, 666 F.3d 1284, 1287 (11th Cir. 2012) (holding that the distribution element of U.S.S.G. § 2G2.2(b) is satisfied where a user "allow[s] [child pornography] files to be accessed on the Internet by placing them in a file sharing folder . . . [and] knowingly makes the files accessible to others."); see also United States v. Grzybowicz, No. 12-13749, --- F.3d ----, 2014 WL 1328250, at *9 (11th Cir. Apr. 4, 2014) (summarizing Spriggs's holding with respect to the "distribution" element of U.S.S.G. § 2G2.2(b)).

14

The district court did not err in failing to give Cubero the two-level decrease described in U.S.S.G. § 2G2.2(b)(1).

**D.    Cubero's Other Procedural Reasonableness Arguments**

Cubero also argues that the district court procedurally erred because it (1) treated the advisory guidelines range as presumptively reasonable, (2) failed to properly consider the non-guideline § 3553(a) factors and Cubero's arguments regarding those factors, (3) failed to adequately and properly consider Cubero's argument for a downward variance, and (4) failed to adequately explain its sentence.

Cubero's assertions are contradicted by the record.

The record makes clear that the district court read and considered all of Cubero's documents and arguments related to his specific characteristics and the circumstances of his offense conduct, including (1) Cubero's objections to the PSI and his sentencing memoranda; (2) the many letters from Cubero and his friends and family; (3) the reports from Cubero's mental health professionals; (4) Cubero's personal history and characteristics, including his absent father, his parents' divorce, and his grandmother's suicide; (5) the so-called "similarly situated" defendants brought to the court's attention by Cubero; and (6) Cubero's request for a downward variance and the memoranda supporting that request.

15

And, before pronouncing Cubero's sentence, the district court heard and considered Cubero's arguments that (1) district courts "routinely" grant downward variances in cases involving the possession and distribution of child pornography via peer-to-peer software; (2) sentencing guideline "2G2.2 does not reflect reasoned and sound judgment, and should not be considered a reasonable and appropriate sentencing option in this case"; (3) to avoid unwarranted sentencing disparity, a "lenient sentence" was reasonable in this case; (4) the 2010 letter to the U.S. Sentencing Commission from Jonathan Wroblewski, the Director of the Department of Justice's Office of Policy and Legislation, recommended that the Commission consider reforming the child pornography guidelines and, thus, supported Cubero's request for a downward variance.[6]

According to Cubero's third supplement to his sentencing memorandum, Wroblewski's letter stated that "the child pornography guideline has been driven up by congressional directives . . . that were not based on empirical evidence regarding the manner in which these offenses are regularly carried out, technological realities, or the history and characteristics of these offenders."

---

[6]The Commission is an agency within the judicial branch. Wroblewski's letter is written as an employee of the Department of Justice, an executive branch agency. Thus, we note that Wroblewski's letter was written to—and not by—the Commission, and the letter was not adopted by the government in this case.

16

Cubero said that Wroblewski's letter "urged the Commission to recommend to Congress legislation that would permit revision of the guideline to better account for offense severity and culpability."[7]  Relying on Wroblewski's letter, Cubero argued that "[t]he high rate of below-range sentences in child pornography cases" reflects the fact that "[m]any judges and prosecutors find that the guidelines for typical child pornography cases are too high and that they fail to differentiate between more and less serious offenses and offenders."

At the sentencing hearing, the district court noted that its "first obligation" was to "properly calculate the guidelines" and its "next obligation" was to sentence Cubero using the factors set forth in 18 U.S.C. § 3553(a).

After calculating the advisory guidelines range, the district court considered Cubero's request for a downward variance.  After hearing Cubero's factual and legal arguments in favor of a downward variance, the district court was "not convinced that based upon the images, [it] should go below the guidelines."  The

---

[7]In his June 2010 letter to the Commission, Wroblewski also wrote that, in several pieces of legislation, "Congress directed the Sentencing Commission to increase the base offense level and to add certain enhancements, including enhancements for the use of a computer in the commission of the crime and for the number of images involved in the crime."  Wroblewski recommended that the Commission consider "updating many aspects of the child pornography sentencing guidelines to better calibrate the severity and culpability of defendants' criminal conduct with the applicable guideline sentencing ranges."  But, he noted that the Commission's ability to implement any changes to the guidelines would be limited "[b]ecause the current guidelines are largely mandated by statute," and, thus, "legislation will be required to modify them."

17

district court rejected Cubero's request for a downward variance, stating that it would not "sentence below the guidelines in the exercise of [its] discretion."

Although not required to provide the minute details of its decision to deny Cubero's request for a downward variance, see Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007), the district court here gave a considerably detailed explanation to support its sentencing decision:  (1) Cubero possessed a high volume of child pornography images and videos; (2) the type and content of images in Cubero's possession were "egregious," "pretty tough," and almost "too embarrass[ing] to mention"; (3) the titles of the child pornography files were horrific and "others [would] be offended if they just even heard the titles"; (4) the images involved toddlers being raped; (5) the fact that Cubero saved more than 200 images and 17 videos onto CDs arguably supported a sentence at the high end of the guidelines range; (6) Cubero's conduct lasted at least six months; (7) victims of child pornography are victimized by the peer-to-peer market of child pornography; (8) relevant differences existed between Cubero's case and the cases cited by Cubero as comparable "downward variance" cases; (9) other sentences from other courts may have been too lenient; (10) sentencing in child pornography cases is difficult because "everybody is different and every crime is different"; (11) the district court needed to consider the "particular characteristics of the defendant"

18

and could not vary simply because of statistical models of what other courts had done in other child pornography cases; (12) the district court had discretion to vary and had varied in other cases; (13) "a reasonable sentence would be at the top of the guidelines" range; (14) despite Cubero's arguments, it was "not convinced"—based upon the images, memoranda, and doctors' reports—that it should sentence below the guidelines range; (15) it would not "sentence below the guidelines in the exercise of [its] discretion"; and (16) the sentence was "harsh" but was "within the spirit of what Congress wants."

The record leaves no doubt that the district court fully considered the statutory sentencing factors, rejected Cubero's arguments for a below-guidelines sentence, and ruled that Cubero's conduct warranted a sentence within the advisory guidelines range. The district court was aware that it could vary downward and impose a sentence below the guidelines range.[8] Yet, it declined to do so given the facts of Cubero's case. Cubero has not met his burden to show that his sentence is procedurally unreasonable.

---

[8]At oral argument, defendant Cubero conceded that the district court recognized that it had discretion to vary downward from the guidelines range. Therefore, the issue on appeal is whether the district court abused its discretion in denying Cubero's request for a downward variance.

## IV.  SUBSTANTIVE REASONABLENESS

Cubero also has not shown that his sentence and supervised release term are substantively unreasonable.  Cubero's 151-month sentence is at the bottom of the advisory guidelines range of 151 to 188 months and well-below the statutory maximum, two indications of reasonableness.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008); United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Further, the facts and the § 3553(a) factors support the district court's decision to impose a 151-month within-guidelines sentence and a life-term of supervised release.

Cubero possessed hundreds of images and more than a dozen videos of child pornography that depicted infants, toddlers, pre-pubescent, and pre-teen girls and boys being molested, raped, and forced to participate in sadistic acts and bestiality. The district court found that the types of images Cubero obtained were "egregious" and reasonably determined that a 151-month sentence was necessary to comply with the statutory sentencing factors.  See 18 U.S.C. § 3553(a).

Cubero argues that the district court failed to account for his personal history and characteristics; but, as noted above, the district court considered Cubero's personal history and characteristics and the mental health evaluations he submitted.

20

Under the totality of the circumstances, we cannot say that the district court abused its discretion and imposed a sentence or term of supervised release outside the range of reasonable sentences.

## V.  SENTENCING COMMISSION'S REPORT

On February 27, 2013—after defendant Cubero's sentencing in November 2012 and after Cubero filed his notice of appeal in December 2012—the U.S. Sentencing Commission ("Commission") released a report to Congress on the child pornography sentencing guidelines ("2013 report").  See United States Sentencing Comm'n, Special Report to Congress:  Federal Child Pornography Offenses (Dec. 2012).  The 2013 report lists Jonathan Wroblewski, whose letter Cubero submitted to the sentencing court, as a "Commissioner, Ex-officio."

Because Cubero has made this report a focus of his appeal, we specifically address the report.

## A.    Commission's 2013 Report

The Commission's 2013 report centers on U.S.S.G. § 2G2.2, the guidelines for non-production child pornography offenses.  The Commission prepared its 2013 report "to contribute to the ongoing assessment by Congress and the various stakeholders in the federal criminal justice system regarding how federal child pornography offenders are prosecuted, sentenced, incarcerated, and supervised."

21

In its 2013 report, the Commission concludes that "the current non-production guideline warrants revision" because (1) the enhancements do not account for an offender's use of modern technology and are, thus, "outdated and disproportionate";[9] (2) the guideline fails "to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior"; and (3) "[t]he current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application."  The 2013 report questions the appropriateness of the current guidelines scheme in § 2G2.2 for non-production cases where the offender used peer-to-peer file sharing and the Internet to receive and distribute pornography.

---

[9]A principal premise of criticisms of the current non-production child pornography guidelines is that "dramatic technological changes related to computers and the Internet in the past decade, such as the ascendance of [peer-to-peer] file-sharing programs, . . . have changed the way that typical offenders today receive and distribute child pornography" and that the guidelines have failed to adapt to these changes in technology. See 2013 report at viii.  For example, in this day and age, a majority of child pornography consumers use peer-to-peer software on their computers to collect child pornography files, which allows even novice child pornography consumers to quickly access and store a large volume of child pornography images and videos in a short amount of time. See id. at 5-6.  This software also allows for instantaneous distribution through the file-sharing aspect of the peer-to-peer software. See id.  Unlike pre-computer-based child pornography consumption, which typically involved time-consuming and costly film-based cameras and photocopiers and distribution in printed form through the postal system, the current computer-based technologies have reduced the barriers to child pornography consumption. See id. at 41–42.  This technological-shift routinely exposes a large number of child pornography defendants to several guidelines enhancements (e.g., use of a computer (U.S.S.G. § 2G2.2(b)(6)); distribution of child pornography (U.S.S.G. § 2G2.2(b)(3)(F)); and quantity-based enhancements (U.S.S.G. § 2G2.2(b)(7)(D)). The 2013 report suggests that, as a result of technology changes, the § 2G2.2 guidelines treat a majority of offenders similarly without accounting for the variations in the offenders' dangerousness, contact with children, or culpability. See id. at xi.

22

The report states that some courts criticize the current child pornography guidelines because they are influenced by congressional directives, "fail[] to reflect the Commission's traditional institutional expertise," and are "not based on empirical evidence."

Although it recommends amending U.S.S.G. § 2G2.2, the Commission's report agrees with the Department of Justice that <u>Congress</u> should "enact legislation providing the Commission with express authority to amend the current guideline provisions." The Commission recommends congressional action—rather than the Commission's own, independent action—because, unlike many sentencing guidelines, the non-production child pornography guidelines "were promulgated pursuant to <u>specific</u> congressional directives or legislation." (Emphasis added).[10]

## B.    Cubero's Arguments

In his appellate brief and at oral argument, Cubero argues that the Commission's 2013 report itself renders his 151-month sentence procedurally and substantively unreasonable and requires at least a remand. In Cubero's view, "the Commission itself [in its 2013 report] specifically validated all of the arguments

---

[10]The Commission also recommends that Congress amend the current federal statutory scheme related to child pornography offenses in several respects.

23

that [Cubero's] defense counsel made to the district court in support of a sentence below the Guideline range."

Cubero argues that his request for a downward variance "deserved careful 'consideration' by the district court, and a valid, case specific explanation" as to why it was denied. Cubero stresses that the 2013 report validates his argument at sentencing that the § 2G2.2 guidelines are overly severe for his "mine-run, first-offender, no-contact case."

In response, the government asserts that the district court considered and rejected many, if not all, of the arguments expressed in the Commission's 2013 report. The government also argues that a report from the Commission cannot override the district court's sentencing experience and that the absence of empirical evidence to support the child pornography guidelines enhancements does not compel the invalidation of a sentencing guideline. The government contends that Cubero's argument, at root, is a challenge to the continuing legitimacy of § 2G2.2.

C.    Discussion

We agree with the government that the Commission's 2013 report does not render the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate. Rather, the Commission recommends that Congress enact legislation providing the Commission with express authority to amend [§ 2G2.2]" The

24

publication of the 2013 report does not change the statutory sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit.

Before the 2013 report, this Court has previously rejected similar arguments about the sentencing guidelines for child pornography offenses generally. See United States v. Wayerski, 624 F.3d 1342, 1354–55 (11th Cir. 2010). We do so here, specifically as to § 2G2.2. While a district court may certainly consider the 2013 report in choosing the ultimate sentence, the report does not invalidate § 2G2.2. And, the district court's use of § 2G2.2 as an advisory guideline does not render Cubero's sentence procedurally or substantively unreasonable. Accord United States v. Snipes, 611 F.3d 855, 870 (11th Cir. 2010) ("[T]he absence of empirical evidence is not an independent ground that compels the invalidation of a guideline.").

Cubero also argues that—in light of the 2013 report's serious criticism of § 2G2.2—this Court should, at a minimum, remand to the district court and require the district court to give greater or more extensive reasons for rejecting his request for a downward variance from the § 2G2.2-based guidelines range. We disagree. Nothing in the Commission's 2013 report altered our appellate duties in reviewing a § 2G2.2-based sentence or the district court's sentencing duties or discretion in

any way.  Accord United States v. Shaw, 560 F.3d 1230, 1239 (11th Cir. 2009) ("We doubt that a single study, or even a number of them, should be allowed to override a sentencing court's experience . . . ."); id. at 1238 ("There is no requirement that sentencing judges confine their considerations to empirical studies and ignore what they have learned from similar cases over the years.  Indeed, one of the reasons district courts are given such wide latitude in sentencing is their experience in handling criminal cases.").

Specifically, the 2013 report also (1) does not alter the district court's duties to calculate the advisory guidelines range and to impose a sentence after considering the § 3553(a) factors, (2) does not limit the district court's discretion to determine what weight to give to each § 3553(a) factor, and (3) does not require the district court to vary from the § 2G2.2-based guidelines range.  See 18 U.S.C. § 3553(a)–(b).  The district court was empowered with discretion to consider Cubero's downward-variance arguments, many of which are now captured by and reflected in the 2013 report, but the court was not compelled to vary downward. Accord Kimbrough v. United States, 552 U.S. 85, 109–10, 128 S. Ct. 558, 575 (2007) (holding that the lack of empirical evidence was one factor that a district court could consider in exercising its post-Booker discretion to depart from the guidelines); Dell v. United States, 710 F.3d 1267, 1279 (11th Cir. 2013) (noting

26

that the Supreme Court's opinion in Kimbrough "empowered" the district courts with discretion to impose a variance based on a policy disagreement with the sentencing guidelines' crack/powder cocaine disparity but did not "command" them to exercise that discretion), cert. denied, 134 S. Ct. 1508 (U.S. 2014).

Contrary to Cubero's arguments, the 2013 report does not heighten the district court's statutory duty to state the reasons for imposing a particular sentence. See 18 U.S.C. § 3553(c). And, the 2013 report does not alter the U.S. Supreme Court's or this Circuit's precedent regarding the district court's obligations under 18 U.S.C. § 3553(c); namely, that a district court's decision to apply the guidelines to a particular case does "not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007); United States v. Ghertler, 605 F.3d 1256, 1262 (11th Cir. 2010) ("A sentencing court is not required to incant the specific language used in the guidelines or articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those factors." (quotation marks omitted)); United States v. Flores, 572 F.3d 1254, 1271 (11th Cir. 2009) ("The district court explicitly stated that it considered the § 3553(a) factors and did not need to individually discuss each of these factors."); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) ("In consideration of the

27

§ 3553(a) factors, the district court does not need to discuss or state each factor explicitly. . . . An acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice.").

Here, the district court properly calculated the § 2G2.2-based guidelines range, treated the range as advisory, recognized that it had discretion to vary, considered the statutory sentencing factors as applied to Cubero, imposed a guidelines sentence supported by the § 3353(a) factors, and adequately explained the sentence imposed. See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The district court's approach was procedurally reasonable, and the sentencing procedure produced a substantively reasonable sentence. Accord United States v. Grigsby, No. 13-3146, --- F.3d ----, 2014 WL 1424547, at *3 (10th Cir. Apr. 15, 2014) (noting that the Commission's 2013 report does not "stand for the proposition that any application of § 2G2.2 will yield an unreasonable sentence").

## VI. CONCLUSION

For the forgoing reasons, Cubero's sentences and term of supervised release are affirmed.

**AFFIRMED**.