[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14505
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20387-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES COLUMBUS CLAYTON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 26, 2015)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

In this direct appeal, James Columbus Clayton, Jr., appeals his conviction

and 24-month sentence for assault on a federal employee resulting in bodily injury,

in violation of 18 U.S.C. § 111(a)(1), (b).  Following a careful review of the record and briefs, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct

On May 19, 2014, at about 12:50 p.m., defendant Clayton, a 64-year-old Army veteran,[1] arrived at the Veterans Administration Medical Center ("VAMC") in Miami, Florida, for a 1 p.m. appointment at the pain clinic.  Clayton was under treatment to manage pain resulting from claimed injuries to his back, hip, and neck while in the Army.

Upon arrival, Clayton inquired whether his appointment would be on time. An office manager, who also served as the receptionist, told Clayton that the doctors were running a few minutes behind schedule.

The office manager checked Clayton in and provided him a pager to alert him when the doctor was ready.  A nurse triaged Clayton.  Clayton left the reception area.

Fifteen to twenty minutes later, Clayton returned, upset that he had not yet been called to see the doctor.  The office manager instructed Clayton to go ask the nurse how much longer the wait would be, and Clayton again left the reception area.

---

[1]Clayton served in the Army from October 1969 to May 1972 but was never deployed overseas.

2

A few minutes later, Clayton came back to the reception area, acting "very belligerent and very combative." He began yelling and cursing profusely, demanding to be seen by a doctor, and complaining that the doctors expected him to be on time even though "the mother fucking doctor always [is] late." The nurse told Clayton to go into the hallway.

Concerned for her own safety and that of the nurse, the office manager retreated into her office, closed and locked the door, pressed the panic buttons on her computer, and called the police. In the hallway, Clayton continued to curse and speak in a raised voice.

Dr. Constantine Sarantopoulos was in an exam room with a patient and a resident physician when he heard Clayton "yelling and screaming" obscenities in the hallway. Dr. Sarantopoulos stepped out into the hallway to investigate the situation, at which point Clayton, who appeared to be "very, very angry," started directing obscenities at Sarantopoulos. Clayton began to move toward Dr. Sarantopoulos in a threatening manner, causing Sarantopoulos to retreat into the exam room for protection.

As Dr. Sarantopoulos tried to close the door to the examination room, Clayton reached the door and attempted to force his way inside. Clayton pushed the door with significant force into Dr. Sarantopoulos's right arm and shoulder.

3

Dr. Sarantopoulos managed to close and lock the door, activated a panic alarm, and told the resident physician to call the police.

At this point, Clayton was kicking and banging on the exam room door in an effort to enter the room. Clayton kicked the door with enough force to leave shoe marks. Clayton also slammed the entire weight of his body against the door.

When the police arrived and told Clayton to leave the VAMC, Clayton continued to act combative and speak in a raised tone, stating that "he wasn't afraid of no mother fucking cop," that "[the police] can't do shit to him," and that "he wasn't going to go until he had been seen by the doctor."

Clayton then lunged at one of the police officers, who sprayed Clayton with pepper spray. Clayton became angrier, started "[going] after anybody who was in sight," and began "grabb[ing]" and "fighting" the police officers. Ultimately, it took three officers to subdue Clayton.

After Clayton was subdued, Dr. Sarantopoulos emerged from the exam room and went to the emergency unit to have his right arm examined. As a result of the attack, Dr. Sarantopoulos suffered a minor muscle sprain. Although Dr. Sarantopoulos was able to return to work the day of the attack, he continued to feel pain in his arm for three to four days and had physical difficulty performing his duties. Clayton was the angriest patient with whom Dr. Sarantopoulos had ever interacted, and the encounter made Dr. Sarantopoulos very afraid for his safety.

4

**B.    Indictment**

A grand jury indicted Clayton on one count of forcibly assaulting a federal employee, Dr. Sarantopoulos,[2] while Sarantopoulos was engaged in the performance of his official duties, thereby inflicting bodily injury, in violation of 18 U.S.C. § 111(a)(1), (b).  The indictment specifically alleged that Clayton "in the commission of the offense did inflict bodily injury" on Dr. Sarantopoulos, exposing Clayton to sentence of up to 20 years' imprisonment under § 111(b).

**C.    Jury Trial**

After Clayton, through counsel, entered a plea of not guilty, the case proceeded to a one-day jury trial on July 14, 2014.  At trial, the government's witnesses testified as to Clayton's offense conduct as described above.

During the jury charge, the district court, over defense objection, provided the following instruction on forcibly assaulting a federal employee with the infliction of bodily injury:

> A defendant can be found guilty of the offense of assaulting a Federal employee only if all the following facts are proved beyond a reasonable doubt:

> First, that the defendant forcibly assaulted, impeded, intimidated or interfered with Constantine Sarantopoulos.

---

[2]Dr. Sarantopoulos is a federally employed physician at the VAMC and director of the pain clinic.

5

Two, that Constantine Sarantopoulos was a Federal employee as described above, then engaged in the performance of an official duty.

Three, that the defendant acted knowingly and intentionally.

Four, that the defendant inflicted bodily injury upon Constantine Sarantopoulos.

The term "forcible assault" can include either an assault which results in physical contact or an intentional display of force that would cause a reasonable person to expect immediate and serious bodily harm or death, <u>regardless of whether the act is carried out or the person is injured.</u>

. . .

Though a forcible assault requires an intentional threat or attempt to inflict serious bodily injury, the threat or attempt does not have to be carried out and the victim does not have to be injured.

<u>But in this case, the Indictment alleges that bodily injury actually occurred, so that is the fourth element that the Government must prove.</u>

(Emphasis added).

Clayton's trial counsel objected, in relevant part, to the inclusion of the language stating that forcible assault can occur "regardless of whether the act [of physical contact or display of force] is carried out or the person injured." Clayton argued that it would confuse the jury to instruct them both that forcible assault can occur regardless of whether the victim is injured and that, <u>in this case</u>, they are required to find bodily injury.

6

The district court's instruction largely matched and was consistent with this Court's pattern jury instruction on forcible assault of a federal employee resulting in bodily injury in use at the time of Clayton's jury trial.  See 11th Cir. Pattern Jury Instructions (Criminal), Offense Instruction 1.2 (2010).

This Court's pattern instruction then included the phrase "regardless of whether the act is carried out or the person is injured," although the instruction has since been amended to omit that phrase.  See Pattern Jury Instructions (Criminal), Offense Instruction 1.2 (2015 Revisions).  However, the instruction still includes the sentence: "Though a forcible assault requires an intentional threat or attempt to inflict serious bodily injury, the threat or attempt doesn't have to be carried out and the victim doesn't have to be injured."  Id.

### D.    Verdict and Sentencing

The jury found Clayton guilty as charged.

The presentence investigation report ("PSI") recommended a base offense level of 10, pursuant to U.S.S.G. § 2A2.4.  The PSI added to that base offense level: (1) a three-level increase because the offense involved physical contact, § 2A2.4(b)(1); and (2) a two-level increase because the offense involved physical injury, § 2A2.4(b)(2).

Clayton's total adjusted offense level was 15.  Based on this total offense level and a criminal history category of I, Clayton's advisory guidelines range was

18 to 24 months' imprisonment.  The statutory maximum for Clayton's offense was 20 years' imprisonment.

At sentencing, Clayton's attorney requested a sentence of probation with mandatory participation in anger management classes.  Clayton's attorney acknowledged that Clayton's guidelines range was correctly calculated but argued that the circumstances of Clayton's offense fell outside the "heartland of what is contemplated" by the Sentencing Commission for cases of assault against federal employees.  Clayton's attorney pointed out that Clayton went to the VAMC on the day of the assault originally for a lawful purpose, was dealing with pain that resulted from his service in the Army, and had since written a letter of apology to Dr. Sarantopoulos.

Clayton addressed the district court and apologized for his actions, indicating that he was out of pain medication at the time of the attack and his actions resulted from the pain he was in.

The government requested a 21-month sentence, emphasizing the seriousness of Clayton's offense and the fear Clayton caused Dr. Sarantopoulos and the other witnesses at the pain clinic.  The government urged the district court to consider "[w]hat would have happened if Dr. Sarantopoulos had not been able to lock [the exam room] door" and Clayton had "been able to get inside that door at Dr. Sarantopoulos."  The government argued that a 21-month sentence would

8

provide adequate deterrence to help ensure the safety of both veterans and employees in VA medical centers.  The government noted, "The veterans of World War II, Vietnam, the Gulf conflict, Afghanistan, Iraq, deserve to be able to seek treatment in a violence-free environment."

The district court then read Dr. Sarantopoulos's statement to the probation officer, in which the doctor recounted the pain he experienced after the attack and the serious emotional impact the experience had on him, including "unpleasant recurrent memories" and "frequent flashbacks."  Dr. Sarantopoulos and his wife became concerned about his safety in the workplace after the attack and about the possibility of retaliation against his family after he testified at trial.  Dr. Sarantopoulos's colleagues at the VAMC also were "very apprehensive and worried" following the attack.

Before imposing sentence, the district court stated that it had considered the parties' statements, the PSI, and the sentencing factors set forth in 18 U.S.C. § 3553(a).  The district court sentenced Clayton to 24 months' imprisonment, a sentence within Clayton's advisory guidelines range.  Clayton objected to the substantive reasonableness of the sentence.

## II.  DISCUSSION

### A.      Jury Instructions

On appeal, defendant Clayton argues that the district court erred by instructing the jury both that bodily injury was an element the government was required to prove and also that forcible assault can occur "regardless of whether . . . the person is injured."  Clayton contends that the inconsistent instruction on whether forcible assault required an actual injury confused the jurors, such that they may have convicted him on an invalid legal theory.

We review the legal correctness of jury instructions de novo but defer to the district court's phrasing of the instruction absent an abuse of discretion.  United States v. Wilk, 572 F.3d 1229, 1236-37 (11th Cir. 2009).  District courts have wide discretion in the style and phrasing of instructions, so long as the instructions accurately reflect the applicable law.  United States v. Williams, 526 F.3d 1312, 1320-21 (11th Cir. 2008).  When a jury instruction accurately expresses the applicable law without confusing the jury, "there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism."  See United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir. 2013) (quotation omitted).

Forcible assault against a federal employee is defined in 18 U.S.C. § 111(a) as an offense in which a person "assaults, resists, opposes, impedes, intimidates, or

10

interferes with [a federal employee] engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). Subsection (b) of the statute provides for an enhanced penalty if the perpetrator "inflicts bodily injury" during "the commission of any acts described in subsection (a)." Id. § 111(b).

Thus, in order to convict a defendant for a violation of § 111(b), the government must prove all the elements of a violation of § 111(a) and the additional element of actual bodily injury. See United States v. Gutierrez, 745 F.3d 463, 471 n.9 (11th Cir. 2014); see also United States v. Siler, 734 F.3d 1290, 1296 (11th Cir. 2013), cert. denied, 134 S. Ct. 1563 (2014) (holding "that § 111 establishes three separate crimes" each consisting of the elements of the preceding category of crime, but adding an element or elements that must be proved to the jury beyond a reasonable doubt, resulting in an increased penalty).

Here, defendant Clayton fails to show any reversible error in the district court's jury instruction on forcible assault. As noted above, the jury charge was consistent with this Court's pattern jury instruction in use at the time of Clayton's trial. See 11th Cir. Pattern Jury Instructions (Criminal), Offense Instruction 1.2 (2010). More importantly, the language of the actual jury charge given accurately reflected that, under § 111, the offense of forcible assault against a federal employee generally does not require actual injury, but that the government must

11

prove that element where it seeks an enhancement for an assault resulting in bodily injury.  18 U.S.C. § 111(a)(1), (b); see Gutierrez, 745 F.3d at 471 n.9.

In particular, the jury charge made clear that, "in this case, the Indictment alleges that bodily injury actually occurred, so that is the fourth element that the Government must prove."  (Emphasis added).  Thus, the language to which Clayton specifically objected—"regardless of whether the act is carried out or the person is injured"—was not unduly confusing in light of the jury instruction as a whole, which clearly instructed the jury that it was required to find that Clayton had inflicted a bodily injury.

**B.      Substantive Reasonableness**

Defendant Clayton next contends that the district court imposed a substantively unreasonable sentence in imposing a 24-month sentence of incarceration and failing to grant a downward variance to a sentence of probation.

We review the reasonableness of a sentence for abuse of discretion.  United States v. Cubero, 754 F.3d 888, 892 (11th Cir.), cert. denied, 135 S. Ct. 764 (2014).  We consider whether a sentence is substantively unreasonable under the totality of the circumstances and in light of the 18 U.S.C. § 3553(a) factors.  Id.

12

In determining a sentence, a district court must evaluate all of the § 3553(a) factors but can attach "great weight" to one factor over others.[3]  Id.  The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).  As to variances, we have recognized that a "district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate."  Cubero, 754 F.3d at 892 (quotations and alteration omitted).  "We give that decision due deference because the district court has an institutional advantage in making sentencing determinations."  Id. (quotation omitted).

The party challenging the reasonableness of a sentence on appeal bears the burden to show that it is unreasonable.  Id. at 893.  "We may vacate a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Id. at 892-93 (quotations omitted).  We have held that two indicators of reasonableness are a sentence within the advisory guidelines range

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

and a sentence well below the statutory maximum penalty.  Id. at 898; United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Here, we cannot say that the district court abused its discretion in sentencing Clayton to 24 months' imprisonment and declining to vary downward from his advisory guidelines range of 18 to 24 months' imprisonment to a sentence of probation.  The district court listened to the parties' arguments as to the appropriate sentence and stated that it had considered those arguments, the PSI, and the § 3553(a) factors.  The evidence showed that Clayton's crime was serious, as he was belligerent, violently attacked Dr. Sarantopoulos, and caused Dr. Sarantopoulos and multiple others to fear for their safety.  When police officers arrived, Clayton refused to leave the VAMC, attempted to attack the officers, resisted arrest, and could not be subdued without the participation of three officers and the use of pepper spray.

Although Clayton attempts to downplay the seriousness of his offense by arguing on appeal that Dr. Sarantopoulos's injury was only "minimal," Dr. Sarantopoulos's statement to the probation officer described not only his physical pain following the attack but also the attack's serious emotional impact on him, his wife, and his colleagues.

Further, we cannot say the district court abused its discretion in finding a sentence of incarceration was necessary to provide adequate deterrence.  The

government argued at sentencing that a sentence of probation would not adequately deter Clayton and others from violent and threatening behavior in VA medical centers that compromises the safety of others and the right of other veterans to receive treatment in a violence-free environment.  Additionally, while on appeal Clayton emphasizes his lack of criminal history points, his medical issues, and the pain he was in on the day of the assault, this Court does not reweigh the § 3553(a) factors.  See Clay, 483 F.3d at 743.[4]

Finally, the 24-month sentence imposed by the district court was within Clayton's advisory guidelines range and was one-tenth the statutory maximum of 20 years for a violation of § 111(b).  See Cubero, 754 F.3d at 898; Hunt, 526 F.3d at 746.

In sum, Clayton has failed to show that the district court abused its discretion by deciding that a 24-month sentence, and not a sentence of probation, was appropriate in light of the § 3553(a) factors.

---

[4]On appeal, although Clayton concedes the advisory guidelines range was correctly calculated at 18-24 months under the Sentencing Guidelines, Clayton also advances several policy arguments for why his advisory guidelines range was excessive in his case.  For example, he argues his status as a veteran meant he had to go to a VA facility where federal employees worked, as opposed to a private pain clinic which did not have federal employees.  It is questionable whether Clayton ever fairly presented these arguments to the district court.  Instead, Clayton argued only generally that his case was outside the "heartland of what is contemplated" by the Sentencing Commission for cases of assault on federal employees.  In any event, nothing in Clayton's policy arguments shows the district court abused its discretion in sentencing.

15

## III.  CONCLUSION

For the foregoing reasons, we affirm defendant Clayton's conviction and sentence.

**AFFIRMED.**