[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13922

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WAYNE DALE EPPS, JR.,
a.k.a. ksaber2040,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cr-00036-BJD-JRK-1

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Wayne Dale Epps, Jr. appeals his 144-month sentence for attempted online enticement of a minor to engage in illegal sexual activity. Epps argues that the district court both misinterpreted and then misapplied the guidelines for determining whether his earlier October 2019 conduct was "relevant conduct" under U.S.S.G. § 1B1.3(a)(1). Alternatively, Epps argues that the district court clearly erred when it found that his earlier conversations with the undercover agent in October 2019 were used "in preparation for" enticing a fictitious minor in February 2020. After careful review, we affirm Epps's sentence.

## I.    BACKGROUND

### A.    Facts

On October 2, 2019, a Federal Bureau of Investigations ("FBI") agent began an undercover investigation to identify adults who were seeking to contact and engage in illegal sexual activity with children. In a public chatroom, the agent posted that he "had access to an 11-year-old child." That same day, Epps contacted the agent through private message.

Between October 2 and 17, 2019, Epps communicated with the agent as "ksaber2040." The agent described his "daughter" as an 11-year-old girl, and Epps asked for a photo of the agent and his daughter. The agent sent a photo of what appeared to be an 11- or

12-year-old child, but the photo did not depict an actual child. Epps stated that he could only "hang out" with the agent and his daughter in the "early mornings or late nights" because of his work schedule. When the agent asked what Epps meant by "hang out," Epps stated he "need[ed]" oral sex and clarified that he wanted the 11-year-old child to do it. The agent said that they could not meet up that evening, but he would check when his wife was working the night shift and he might be able to the following day.

A few days later, Epps followed up with the agent. Epps reiterated that he wanted the child to perform oral sex on him. The agent asked if Epps would be willing to have sex with the child if she wanted to, and Epps said, "Yeah if she was cute." Epps stated that he would not "bail" if the agent set up a time for them to meet.

The agent explained that his wife worked normal shifts so Epps would not be able to meet the child that week. In response, Epps asked, "Till then can i have another pic of her?" The agent asked what kind of photo Epps wanted, and Epps asked for one that showed the child's genitalia. The agent responded that he would "try to get one" if Epps wanted him to. Epps replied, "Yes please."

A few days later, the agent contacted Epps and informed him that he had his daughter alone the following night. Epps said he could meet at 11:00 p.m. and confirmed again that he wanted the child to perform oral sex on him. However, Epps did not follow through on his stated intention to meet the child for sex.

Several months later, on February 14, 2020, Epps reinitiated contact with the agent.  Epps said he "[h]ad alot [sic] of stupid stuff happen" and "inquir[ed] about [the agent's] offer."  The agent asked who Epps was.  Epps explained how the agent knew Epps and asked if he could still meet the agent's daughter.  The agent said, "Dude I don't remember u what did we agree to?"  Epps explained that he wanted to meet the child and "possibly have her stroke or suck" him.

The agent said he did not remember Epps, so Epps clarified that his name was Wayne, they spoke before, and the agent's wife was supposed to move to a night shift.  The agent said, "Wait r u the dude who was supposed to meet and didn't show."  Epps replied, "No.  I was waiting on you to let me know when her shift changed.  Then my work schedule got crazy and we fell outta contact.  We never set a time to meet because of that."  The agent told Epps that his daughter had turned 12 and asked if Epps still wanted her to perform oral sex.  Epps said he did and explained that he "got shifted to an over night for a month and half till [the company] had enough people trained to fill the shift."  The agent asked if Epps was "clean," and Epps replied that he was and that he could use a "flavored condom."

Epps and the agent agreed to meet on February 18 at a shopping area in Jacksonville, Florida.  Epps lived in Jacksonville.  Upon Epps's arrival at the predetermined location, FBI agents arrested Epps.

A short time later, Epps was interviewed. During that interview, Epps admitted that he had "engaged in sexually explicit conversations with the [agent's] persona on the app and traveled to the particular predetermined location to meet the [agent] and the purported child."

Epps consented to a search of his residence, cellphone, and vehicle. The search of his cellphone revealed that the application he used to communicate with the agent was "actively running on the device," the username listed on the account was "ksaber2040," and the private message section of the application, beginning on February 14, 2020, was preserved on the cellphone.

## B.  District Court Proceedings

A federal grand jury indicted Epps with one count of attempted online enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). In June 2021, Epps pleaded guilty to that count.

Ordinarily, a defendant who violates 18 U.S.C. § 2422(b) has a base offense level of 28. *See* U.S.S.G. § 2G1.3(a)(3). However, Epps's presentence investigation report ("PSR") recommended a base offense level of 32 under U.S.S.G. § 2G2.1(a). Specifically, § 2G1.3(c)(1) provides as follows: When the offense involves enticing "a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," a district court instead must apply § 2G2.1 (which provides for a base offense level of 32), "if the resulting offense level is greater than that

determined [through the application of § 2G1.3]." *See id.* § 2G1.3(c)(1) & cmt. n.5(A). Because 32 is greater than 28, the PSR recommended that the district court apply § 2G2.1(a)'s base offense level of 32 pursuant to the cross reference in § 2G1.3(c)(1). In this regard, the PSR reported that in October 2019 Epps "requested that the [agent] send him a picture of the 'child,' and specifically asked, 'Do you have any that shows her tits or pussy?'" Thus, Epps requested a sexually explicit picture of the child.[1]

The PSR also recommended (1) a four-level increase under § 2G2.1(b)(1)(A) because the offense involved a minor who was under 12 years old; (2) a two-level increase under § 2G2.1(b)(6)(B) because the offense involved the use of a computer or computer service "to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor" to produce sexually explicit material; and (3) a five-level increase under § 4B1.5(b)(1) because Epps engaged in a pattern of prohibited sexual conduct. Lastly, the PSR recommended reducing Epps's offense level by three levels under § 3E1.1(a) and (b) because Epps demonstrated acceptance of responsibility. These recommendations yielded a total offense level of 40.

With no criminal history points, Epps's criminal history category was I. Based on a total offense level of 40 and a criminal

---

[1] Although Epps challenged the application of this cross reference in the district court based on *United States v. Caniff*, 955 F.3d 1183 (11th Cir. 2020), Epps does not raise this *Caniff* argument on appeal.

21-13922                 Opinion of the Court                      7

history category of I, the PSR calculated an advisory guidelines range of 292 to 365 months' imprisonment. The statutory minimum term of imprisonment was 10 years. 18 U.S.C. § 2422(b).

Before sentencing, Epps filed a sentencing memorandum and argued, in part, that his October 2019 conduct was not "relevant conduct" for any purposes in sentencing and should not be considered at all. Epps asserted that the October 2019 conduct took place four months before the February 2020 conduct, that he had stopped communication with the agent, and that he had abandoned his intent to follow through with his October 2019 conduct. Epps claimed that his October 2019 conduct would have hurt his February 2020 efforts if the victim was anyone other than an undercover agent because it would have "hurt his credibility" and would have made him seem "suspicious and untrustworthy." Accordingly, Epps argued that his October 2019 conduct did nothing to further the February 2020 enticement, and there was no indication that his October 2019 communications were in preparation for enticing a minor in February 2020.

At the sentencing hearing, Epps did not object to the PSR's facts about his offense conduct or to the government's exhibits showing screenshots of Epps's chats with the agent in October 2019 and February 2020. Instead, Epps reiterated the arguments from his memorandum.

In response, the government argued that Epps's October 2019 conduct was "relevant conduct" under the guidelines because he acted "in preparation for the commission of the offense." The

government emphasized that in October, Epps "establish[ed] the ground rules" by telling the agent that he wanted to have sex with an 11-year-old child, but after a plan was made to meet, Epps did not follow through "because other things got in the way." In other words, the government contended that the October 2019 conduct was "relevant conduct" to his February 2020 offense because Epps paused—not abandoned—his attempt.

The district court acknowledged that Epps made an "erudite argument" but stated that his argument was "undercut by the facts" of his case. The district court explained that Epps's October 2019 conversations were "certainly used as a means [for him to] reengag[e]" in conversation with the agent in February 2020 and were thus "in preparation for" the February 2020 offense. Therefore, the district court determined that the PSR properly calculated the guidelines and adopted them.

The district court adopted the PSR's guidelines calculations, varied downward from the advisory guidelines range of 292 to 365 months, and imposed a sentence of 144 months' imprisonment, followed by a lifetime of supervised release. After the district court pronounced the sentence, Epps objected to the district court's "rulings on [his] presentence report objections."

This appeal followed.

## II.    STANDARD OF REVIEW

Ordinarily, we review de novo the district court's legal interpretation of the Sentencing Guidelines and the district court's

application of the Sentencing Guidelines to the facts. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). However, when a party fails to make specific objections at sentencing after being given an opportunity to do so, challenges to the sentence on appeal will be reviewed only for plain error. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014).

Additionally, we review for clear error the application of the "relevant conduct" guidelines in U.S.S.G. § 1B1.3 to the facts of the case. *United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008).

## III.    DISCUSSION

We begin with an overview of the "relevant conduct" guidelines in § 1B1.3(a)(1) and then address Epps's arguments.

## A.

When calculating a defendant's advisory guidelines range, a district court must consider all "relevant conduct," as defined in § 1B1.3. *United States v. Siegelman*, 786 F.3d 1322, 1330–31 (11th Cir. 2015). Activity that qualifies as "relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction[] [or] *in preparation for that offense*." U.S.S.G. § 1B1.3(a)(1) (emphasis added). "[R]elevant conduct is broadly defined to include both uncharged and acquitted conduct

that is proven at sentencing by a preponderance of the evidence." *Siegelman*, 786 F.3d at 1332.

## B.

Epps argues that the district court misapplied § 1B1.3(a)(1) by both (1) misinterpreting the legal phrase "in preparation for" and (2) making a finding that his October 2019 conduct was "in preparation for" the charged offense.

Epps contends that because the guidelines do not define the phrase "in preparation for," the plain meaning should apply. Relying on Black's Law Dictionary, Epps argues that the plain meaning of "preparation" is "[t]he act or process of devising the means necessary to commit a crime." Epps claims that the government must show the conduct was "taken prior to, *and in order to facilitate*, the charged offense." Epps contends the mere fact that his prior conduct made it easier to reengage with the agent in February 2020 is insufficient to meet the standard of "in preparation for," either legally or factually. Epps also claims the government must show he explicitly intended in October 2019 to entice a minor in February 2020.

In response, the government argues that Epps waived his legal interpretation argument by not raising it adequately in the district court and that this Court should review that legal issue for plain error. Epps disagrees, contending his arguments in the district court were broad enough to preserve both the legal and

factual issues as to whether his October 2019 conduct was "relevant conduct."

We need not resolve that debate as Epps has not shown any error, plain or otherwise, for several reasons.

First, Epps is correct that the guidelines do not define "in preparation for" and that Black's Law Dictionary defines "preparation" as "[t]he act or process of devising the means necessary to commit a crime." *Preparation*, Black's Law Dictionary (11th ed. 2019). However, Epps is incorrect that the government must show Epps had the specific intent in October 2019 to entice a minor at a specific later time in February 2020. Nothing in the "relevant conduct" guidelines or the plain meaning of "in preparation for" mentions or requires a showing of such specific intent as Epps asserts.

Second, we need not resolve the parameters of the phrase "in preparation for" because, as the district court found, Epps's October 2019 acts so clearly facilitated the means necessary to commit the charged offense. Indeed, the district court found Epps's October 2019 conversations with the agent were used "as a tool" to help Epps reengage with the agent just a few months later.

Furthermore, during the October 2019 conversations, the agent posing as the child's father repeatedly expressed disbelief that Epps would follow through with his stated desires. By requesting in October 2019 that the agent send a sexually explicit photograph of the child, Epps laid the groundwork (1) to show he truly was

interested in engaging in sexual activity with the child and (2) to arrange a meeting with the child to do just that. In short, Epps asked the agent for a photograph to facilitate his plan to later entice the child.

The fact that Epps did not follow through on his plan until four months later does not mean his October 2019 conversations with the agent were not in preparation for the crime he planned, and later attempted, to commit. In fact, when Epps restarted communications with the agent in February 2020, Epps reminded the agent about the previously exchanged messages. Epps also explained that he had stopped responding because he (1) "had a lot of stupid stuff happen," (2) was waiting for the agent to tell him when his wife had started working a night shift, and (3) had moved to an overnight shift at his job. Epps then renewed his request to engage in sexual acts with the child by "inquiring about [the agent's] offer," referring back to his October 2019 conversations with the agent that demonstrated his serious interest.

Accordingly, under the particular facts of this case, the district court did not err, much less clearly err, when it found Epps's October 2019 conduct—including his requesting a sexually explicit photograph of the 11-year-old child from the agent—was "in preparation for" his February 2020 offense of attempting to entice that child to engage in sexual activity.

## IV.    CONCLUSION

For these reasons, we find no reversible errors in the district court's determination that Epps's October 2019 conduct was relevant conduct under § 1B1.3(a)(1).  Epps's 144-month sentence is affirmed.

**AFFIRMED.**