[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12318
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cr-00220-GAP-TBS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY MCDONALD,
a.k.a. Bam-Bam,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 24, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Gregory Eugene McDonald appeals his total sentence of 240 months' imprisonment for carjacking, in violation of 18 U.S.C. §§ 2119(2) and 2 ("Count One"), and carrying, using, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(A)(ii), and 2 ("Count Two"). McDonald, his co-defendant Dante Askins, and two minors confronted a man who was exiting his truck in a hotel parking lot. The foursome forced the victim back into his truck at gunpoint, tied up his hands and feet with duct tape and zip ties, hit him over the head with the gun, causing him to bleed, and then drove him around Orlando for several hours. The district court sentenced McDonald to a 156-month prison term on Count One, in the middle of the advisory guidelines range of 140 to 175 months, and to a mandatory-minimum, consecutive 84-month prison term on Count Two, for a total of 240 months' imprisonment.

On appeal, McDonald argues that his sentence is procedurally and substantively unreasonable. After review, we affirm McDonald's total 240-month sentence.

## I. REASONABLENESS PRINCIPLES

"We review the reasonableness of a sentence for abuse of discretion using a two-step process." United States v. Cubero, 754 F.3d 888, 892 (11th Cir. 2014) (quotation marks omitted). We look first at whether the sentencing court

committed any significant procedural error, such as misapplying the guidelines or treating them as mandatory, failing to consider the 18 U.S.C. § 3553(a) sentencing factors, choosing a sentence based on clearly erroneous facts, or failing to adequately explain the sentence imposed. Id.[1] However, if the defendant failed to raise the procedural challenge in the district court, our review is limited to plain error. United States v. Vandergrift, 754 F.3d 1302, 1307 (11th Cir. 2014).

Second, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances. Cubero, 754 F.3d at 892. The party challenging the sentence bears the burden to show it is unreasonable. United States v. Alvarado, 808 F.3d 474, 496 (11th Cir. 2015). The weight given to any particular § 3553(a) factor is within the district court's discretion, and this Court will not substitute its judgment for that of the district court. Id. We will reverse a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

3

reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

## II.  PROCEDURAL REASONABLENESS

On appeal, McDonald does not dispute that the district court correctly calculated the advisory guidelines range and relied on undisputed facts in choosing the sentence.  Rather, McDonald contends that the district court failed to address or "glossed over" his non-frivolous mitigation arguments and did not explain why it rejected them.

We note, initially, that McDonald did not make this procedural objection at sentencing.  Nevertheless, whether reviewed for plain error or abuse of discretion, we conclude that the district court sufficiently considered the § 3553(a) sentencing factors and explained its imposed sentence.

When pronouncing the chosen sentence, the district court need only set forth enough to satisfy this Court that it considered the parties' arguments and had a reasoned basis for exercising its own legal decisionmaking authority.  United States v. Carpenter, 803 F.3d 1224, 1232 (11th Cir. 2015).  The district court "is not required to incant the specific language" or to "articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those factors."  Id. (quotation marks omitted).  While the district court is not required to "respond in detail to every argument presented by

4

the defendant," the district court normally will explain why it rejected non-frivolous arguments for a different sentence.  Id.  That said, the district court's failure to specifically discuss mitigating evidence does not mean the district court erroneously failed to consider it.  United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007).

Here, the record establishes that the district court considered the § 3553(a) factors and adequately explained the chosen sentence.  Prior to pronouncing the sentence, the district court indicated that it had reviewed the presentence investigation report ("PSI"), including McDonald's eight exhibits attached thereto, and the parties' sentencing memoranda.  Together, these documents provided detailed information about McDonald's mitigating circumstances, including: (1) his young age of 18; (2) his unstable and disadvantaged upbringing; (3) his mental and emotional health diagnoses and intellectual issues, including his full scale IQ score of 64, ADHD, bipolar disorder, PTSD, and a learning disability; (4) his need for rehabilitation and treatment; (5) his vulnerability to victimization in prison; (6) his role in the offenses and his prior criminal history; and (7) a comparison to co-defendant Askins's role in the offenses and criminal history.  The district court listened to McDonald's arguments for a downward variance and stated that it would consider McDonald's eight exhibits relating to his mental health issues.  The district court also heard from McDonald and his mother, who described

5

McDonald's rough upbringing, her own neglect of McDonald due to her incarceration and drug addiction, and McDonald's mental health and intellectual problems.

While the district court did not specifically mention McDonald's request for a downward variance in imposing its sentence, the record shows that the district court gave due consideration to his arguments and imposed a sentence that clearly reflected its consideration of the § 3553(a) factors. The district court expressly articulated that it was giving non-binding deference to the guidelines range and that it had considered the statutory factors.

The district court went further by highlighting the seriousness of McDonald's offenses, his history and characteristics, and the need for general deterrence and to protect the public. Specifically, the district court described the crimes as "horrific," and "about as bad as it gets," stating that they were carried out solely for "evil" and "ignore[d] basic humanity." The district court continued, stating, "It's one thing to steal a car, even rob a person at gunpoint, but [it is another] to plan ahead of time in an apparent jovial fashion to buy zip ties and duct tape with a plan to kidnap someone at gunpoint for no apparent reason" other than to terrorize the victim and his family. Addressing the sentencing disparity, the district court explained that the main difference between McDonald and his co-defendant, Askins, was their criminal history categories, which dictated their

6

applicable guidelines ranges.  As to the defendants' roles and relative culpability, the district court stated:

> Now, we spent most of the day with the government attempting to portray Mr. McDonald as the ringleader, as the more culpable defendant, and the evidence in that regard is kind of all over the place. The main sticking point, I suppose, is who struck [the victim] in the car, and the evidence in that regard is in conflict.  It was probably Mr. McDonald.  But frankly I don't think it really matters.
> With respect to the relative culpability of these two men, . . . Mr. McDonald has issues, mental health issues, learning difficulties, and it's frankly difficult to accept the fact as between he and Mr. Askins that it was Mr. McDonald who was the leader.
> My sense is it may have been just the opposite.  Mr. McDonald may have exhibited more violent behavior, but in terms of intellectual functioning and ability to lead, to plan this caper, to involve these two minors, and destroy all these lives, I think these two defendants are equally culpable.

The district court found the need to protect the public to be a significant factor, noting that both defendants were dangerous young men.  The district court explained that it was imposing a higher sentence on McDonald because of his criminal history "as well as the fact that he appear[ed] to be a violent and dangerous person," making protection of the public an even more significant factor in his case.  The district court recognized that "Mr. McDonald has issues" and agreed that "society ha[d] let him down" by not addressing them "at an earlier stage" in his life, but expressed the view that it was too late to address them at sentencing.

Although McDonald contends that the district court failed to address rehabilitation and the need for treatment, the district court was not required to explicitly articulate its consideration of each statutory factor. Nevertheless, the district court specifically: (1) noted McDonald's mental health issues and intellectual deficits; (2) acknowledged that society had let McDonald down; and (3) ordered McDonald, as a condition of supervised release, to participate in a mental health treatment program.

In short, the district court implicitly rejected McDonald's argument that his mitigating circumstances warranted a downward variance.[2] It is readily apparent from the record that the district court concluded that, regardless of McDonald's tragic personal history and mental health issues, a sentence within the advisory guidelines was appropriate based on the horrific nature of the offenses, McDonald's dangerousness, and his extensive criminal history. The district court considered the sentencing factors, and its explanation for the chosen sentence was more than sufficient.

---

[2]McDonald contends the district court erred in denying him a downward departure based on his diminished mental capacity. As McDonald concedes, nothing in the record suggests the district court believed it lacked authority to depart downward. To the contrary, the sentencing transcript suggests the district court understood it was permitted to depart and chose not to do so. Accordingly, we lack jurisdiction to review the merits of the district court's departure decision. See United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006).

## II.  SUBSTANTIVE REASONABLENESS

The district court did not abuse its discretion in sentencing McDonald to a total term of 240 months' imprisonment on Counts One and Two.  As to Count Two, the district court imposed the mandatory-minimum 84-month sentence, which the district court was required to run consecutive to any sentence on Count One.  See 18 U.S.C. §§ 924(c)(1)(A)(ii).  Thus, McDonald's substantive reasonableness challenge really is directed at his 156-month sentence on Count One.

The 156-month sentence on Count One fell within the advisory guidelines range of 140 to 175 months, and was roughly half the 25-year statutory maximum under 18 U.S.C. § 2119(2), two indications of a reasonable sentence.  See United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014); United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  Indeed, McDonald's total sentence on both counts was five years below the statutory maximum for Count One.

Furthermore, the facts and § 3553(a) factors support the chosen sentence.  As the district court correctly found, McDonald's crimes were especially "horrific," as they involved a pre-planned carjacking and kidnapping of a victim at gun point, using zip-ties and duct tape, and the use of violence against the victim that required medical treatment after the ordeal.  McDonald and his co-defendant Askins involved two minors in the planning and execution of the crimes and,

9

during the offenses, the four perpetrators discussed possibly killing the victim once they learned he was a law enforcement officer.  In fact, the victim managed to escape only after his truck's Onstar system was activated and announced that police were being directed to the truck's location, which caused the four perpetrators to flee.  As a result of the offenses, the victim suffered from PTSD and had to seek counseling.

In addition, by the time he was 18, McDonald had racked up an extensive criminal history.  Between the ages of 12 and 14, McDonald was adjudicated or convicted of seven offenses, several of which were violent, including trespassing, petit theft, sexual battery, lewd or lascivious molestation and battery, grand motor vehicle theft, criminal mischief, burglary of a conveyance, resisting an officer without violence, battery by a detainee in a detention facility, carjacking with a deadly weapon, aggravated assault with a deadly weapon, kidnapping with intent to commit a felony, and burglary of a dwelling.  For the last four offenses, McDonald served three years in prison and had been released on June 26, 2015, less than three months before he committed the similar offenses in this case.  In fact, McDonald received 2 additional criminal history points, which resulted in the

10

highest criminal history category of VI, because he was on probation for those four prior convictions when he committed the instant offenses.[3]

McDonald does not argue that the district court unjustifiably relied upon the above facts, but rather that McDonald's age, mental-health issues, low intelligence, unfortunate upbringing, and need for educational or vocational training and mental-health treatment warranted a shorter sentence. The district court was well within its discretion to give those factors less weight than the seriousness of McDonald's current crimes, the amount, frequency, and violent nature of his prior offenses, and the need to protect the public and provide general deterrence. See United States v. Rosales-Bruno, 789 F.3d 1249, 1254-56, 1262-63 (11th Cir. 2015) (explaining that a sentencing court may place substantial weight on a defendant's criminal record because five of the § 3553(a) factors implicate the defendant's criminal history).

Finally, McDonald argues that the district court created an unwarranted disparity by giving McDonald a 156-month sentence on Count One and his co-defendant Askins an 84-month sentence on Count One. The district court explained that the difference in the two co-defendants' sentences was mainly a result of their criminal histories and that McDonald's criminal history indicated he

---

[3]There is no merit to McDonald's claim that the district court failed to consider that his adult criminal convictions arose from offenses committed at age 14. McDonald's age when he committed each offense was listed in the PSI, which the district court reviewed.

11

was a violent and dangerous person.  Co-defendant Askins was assigned a criminal history category of I, while McDonald was assigned a criminal history category of VI, and thus the two were not similarly situated.  See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (explaining that to demonstrate an unwarranted sentencing disparity, the comparator must be convicted of similar conduct and have a similar criminal history).

McDonald contends that the district court miscalculated co-defendant Askins's criminal history category by omitting two of Askins's prior convictions from his criminal history score.  According to McDonald, co-defendant Askins should have been assigned a criminal history category of III, which would have resulted in a guidelines range of 97 to 121 months.  Even assuming arguendo that McDonald is correct, this fact would not show that McDonald's 156-month sentence on Count One was substantively unreasonable.  If anything, it suggests that co-defendant Askins's sentence was too lenient, not that McDonald's sentence was too harsh.  In any event, Askins, even with a criminal history category of III, would not be "similarly situated" to McDonald, with a criminal history category of VI.  See Docampo, 573 F.3d at 1101.[4]  Further, to the extent McDonald points to the two minors involved in the offenses, they also were not "similarly situated" to

---

[4]McDonald also complains that co-defendant Askins later received an improper substantial assistance reduction pursuant to Federal Rule of Criminal Procedure 35(b), but this fact has no bearing on the substantive reasonableness of McDonald's sentence.

12

McDonald, as the minors were not charged.  United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (concluding that an accomplice who was never prosecuted, convicted, and sentenced was not "similarly situated" to the defendant).

For all these reasons, McDonald has not shown that the district court's 240-month total sentence was an abuse of discretion.

**AFFIRMED.**