[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-13285

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANDRE MOORE,
a.k.a. George Harry Bookard,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00205-TPB-SPF-1

————————————————

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Andre Moore appeals his 96-month total sentence for access device fraud and aggravated identity theft.  He argues that his sentence was substantively unreasonable because the district court did not give a sufficiently compelling justification for the upward variance and did not consider Moore's various mitigating factors.  For the following reasons, we affirm.

## I.

In May 2020, a criminal complaint was filed in the Middle District of Florida against "George Harry Bookard" for access device fraud and aggravated identity theft, and an arrest warrant was executed in the Southern District of Florida.  At a detention hearing before a magistrate judge in the Southern District of Florida, Moore identified himself as "George Bookard," and the magistrate judge ordered him detained and committed to the Middle District of Florida.  A grand jury in the Middle District of Florida charged "Bookard" with six counts of access device fraud and three counts of aggravated identity theft. After "Bookard" filed an amended motion for pretrial release in August 2020, a magistrate judge held a bond hearing, during which Moore responded as Bookard.  The government notified the magistrate judge that it believed Moore was not George Bookard, who was a real person in New York. Moore's counsel responded that the pretrial report suggested that

his real identity was George Bookard and that he did not challenge his identity at his detention hearing in the Southern District of Florida. The magistrate judge expressed concern about Moore's identity and denied his motion for pretrial release.

In May 2021, Moore was charged in a superseding information with access device fraud, in violation of 18 U.S.C. § 1029(a)(2) (Count One), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Two). Moore waived prosecution by indictment and consented to being charged by information. After Moore consented to holding the change-of-plea hearing before a magistrate judge, he pleaded guilty to both counts, under a written plea agreement.

The factual proffer to the plea agreement stated the following. From around September 2019 to around May 2020, Moore committed access device fraud and identity theft on multiple occasions by obtaining personal identifying information ("PII") of more than 100 victims, which he used to obtain new or access dormant credit card accounts. Moore used the credit card accounts at stores throughout the United States and was captured on several store surveillance videos using the unauthorized access devices, i.e., credit cards with the victims' PII, to purchase faucets, which he resold over the internet, and other items. The total loss from Moore's unlawful use of the credit cards was $650,145.03. In October 2019, Moore used victim A.J.'s PII to obtain a Lowe's credit card issued by Synchrony Bank and used that credit card to make a $3,110.55 purchase at the store, a transaction that affected

interstate and foreign commerce.  Investigators interviewed the victim, who reported that he did not know Moore, did not authorize the purchases, and did not permit Moore to possess or use the PII or account information.  Moore knew that his use of A.J.'s PII was fraudulent, that his use of the credit card with A.J.'s account information was unauthorized, that A.J. was a real person, and that he did not have lawful authority to use his identity or account information.  Law enforcement discovered Moore's fraudulent conduct after he tried to open a fraudulent credit card account at a store in the name of victim A.E. in December 2019.  Moore used his own photograph on a fraudulent driver's license with A.E.'s date of birth and PII.  The store's customer service representative identified the driver's license as fraudulent because the ID number did not conform to the usual Florida numbering format.  A.E. confirmed to law enforcement that he did not know Moore and did not permit him to possess or use his PII or account information.  While Moore was committing the fraud, he was living under the false identity of "George Bookard" and gave this false identity to law enforcement during his May 2020 arrest and in court at his initial appearance.

The magistrate judge recommended that the district court accept his guilty plea.  And the district court did so.

The presentence investigation report ("PSI") largely reiterated the factual proffer from the plea agreement in describing Moore's offense conduct, though it included instances of Moore using the PII of thirteen more victims to obtain credit cards and to

make purchases with such cards.  The PSI also detailed the following.  Following Moore's attempt to obtain a credit card account using A.E.'s PII, Lowe's employees wrote down Moore's license plate number as he drove out of the parking lot.  Law enforcement conducted a license plate inquiry on the license plate number, which revealed the vehicle was registered to Enterprise Rentals. Queries conducted with Enterprise Rentals and Wells Fargo determined that in December 2019, Moore rented the vehicle using his driver's license and his Wells Fargo debit card.

In calculating the guideline range for Count One, the PSI applied a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2).  Moore received a 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) because the loss that resulted from his conduct was $650,145.03, which was between $550,000 and $1.5 million.  He received a 6-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims, as he obtained the personal identifying information of more than 100 victims.  He received a 2-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice because he provided a false identity to a magistrate judge. Moore received a 3-level reduction under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility and timely notifying the government of his intention to plead guilty, resulting in a total offense level of 21.  The probation officer determined that Moore had two criminal history points under U.S.S.G. § 4A1.1(c) from a 2009 conviction for felony larceny and a 2012 conviction for petit larceny, resulting in a criminal history category of II.  The probation officer

noted that Moore was a native and citizen of Jamaica and had illegally resided in the United States since he was four years old. As to Count One, the maximum term of imprisonment was ten years, and as to Count Two, the minimum term of imprisonment was two years. The term of imprisonment for Count Two had to be imposed consecutively to Count One. Based on the total offense level of 21 and a criminal history category of II, the probation officer determined a guideline range of 41 to 51 months' imprisonment.

Moore objected to the inclusion of the obstruction enhancement under U.S.S.G. § 3C1.1. The probation officer responded that Moore was arrested in May 2020 as "George Harry Bookard" and that there was no information in the docket to show that Moore asserted his identity to the district court at his initial appearance. The probation officer also stated that, at a hearing on Moore's motion for pretrial release in August 2020, the government opposed the request for release because he had used several alias names, including the charged name of George Harry Bookard, who was a real person who resided in New York. The probation officer also stated that Moore's counsel advised the district court that the pretrial report had not been directly disputed and that Moore's identity was that of George Bookard, and that Moore did not attempt to correct his counsel or advise the district court that he was not George Bookard. The probation officer noted the magistrate judge's concerns about Moore using alias names and was unsure as to his identity and that, in October 2020, Moore's counsel

confirmed with the government that his true name was Andre Moore. Moore also objected to the inclusion of his 2012 petit larceny conviction due to the lack of substantive information related to the conviction.

Before sentencing, Moore filed several letters of support. The government filed a sentencing memorandum, arguing that the enhancement for obstruction of justice was appropriate because Moore misrepresented his identity as Bookard upon his federal arrest in the Southern District of Florida, in his interview with the probation officer to prepare the pretrial report, at his initial appearance in the Southern District, and at his initial appearance and detention hearing in the Middle District and provided Bookard's birthdate, which was material to detention. The government contended that Moore's obstructive conduct was egregious, as he allowed the misrepresentations about his identity to continue at the initial appearance, and that the enhancement was appropriate when he gave a false identity to the probation officer preparing the pretrial report. The government also argued that, given the seriousness of Moore's offense, a guidelines-range sentence was appropriate, considering he stole more than 100 identities, used them to commit more than $650,000 in fraud, and exploited the COVID-19 pandemic to commit significant fraud.

At sentencing, Moore withdrew his objection to the obstruction-of-justice enhancement, but still objected to the scoring of his 2012 petit larceny conviction. The district court noted that the Sentencing Guidelines were advisory and that it wanted to give notice

that it was considering an above-guidelines sentence, considering the amount of money at issue over a short time period.  Moore responded that, while the district court was not required to give notice before imposing an above-guidelines sentence, he could appeal such a sentence under the appeal waiver in his plea agreement.

The district court then sustained Moore's objection to the prior conviction.  The district court calculated Moore's Guidelines range, with a total offense level of 21 and a criminal history category of I, as 37 to 46 months' imprisonment, plus a consecutive 24-month sentence for the aggravated-identity theft offense, for a total of 61 to 70 months' imprisonment.  The district court stated that it had read all the materials and the submissions from both sides. During the statement by a representative from Lowe's, the district court confirmed that the total loss was $650,145.03.

The government recommended a total sentence of 70 months' imprisonment, which was at the high end of the Guidelines range.  The government argued that, while Moore was committing credit card fraud and stealing people's identities, he was living under a false identity, which he used in speaking to law enforcement and a magistrate judge.  The government also argued that the real George Bookard had told an agent that Moore had ruined Bookard's life by affecting Bookard's credit, his ability to rent an apartment, and his ability to get a car, and by causing him to be sued.  The government also contended that, because of Moore's insistence before the court and with law enforcement that he was George Bookard and the lack of a Social Security number as a

person illegally in the United States, it was unclear that Andre Moore was his real name even when his fingerprints linked him to the New York case. The government argued that, in jail calls, Moore kept saying that no one should tell anyone his real name. The government contended that the Guidelines range was reasonable, if not low, considering the number of victims and loss amount of $650,000. The government also argued that, while this was different from most credit card cases that involved a conspiracy of multiple defendants, the Guidelines did not account for the commission of the offenses during the COVID-19 pandemic, i.e., when everyone was in lockdown and Moore used the fraudulent identities to purchase items that were scarce during the pandemic.

During Moore's allocution, he stated that he wanted to apologize to his victims, that he made a series of bad decisions after he lost his home to a real estate investment scam, and that he attended anger management and substance abuse classes. He also stated that he would learn from his mistakes to live a more responsible and honest future and that, considering he grew up without a mother or father, he knew the importance of positive role models in his children's lives. He also stated that he would cooperate further with the agents and with the representatives from Lowe's and Synchrony Bank to prevent this from happening again and to help train employees.

Through counsel, Moore argued that the government's argument that he exploited the COVID-19 pandemic was overstated, considering there was no alleged conduct after March 2020 in the

indictment or arrest warrant.  He requested a sentence of time served as to Count One, followed by a two-year sentence as to Count Two.  He contended that the district court should impose a time-served sentence as to Count One because: he was not a violent person and did not commit a violent crime; he would face three years of supervised release; and he may be deported, despite being brought from Canada at a very young age.  He also argued that courts have granted downward variances based on the collateral consequences a defendant could face if deportable, including ineligibility for early release, the inability to serve his sentence in a minimum-security facility, and the inability to qualify for reduced sentence credits for substance abuse programs.  He contended that he had entered a plea agreement, largely waived his right to appeal, and cooperated with the government, and that, while the government had not requested a lower sentence based on substantial cooperation, the district court could consider his willingness to enter into a plea agreement and cooperate.

Next, Moore argued that, while Lowe's and Synchrony Bank submitted victim impact statements, Lowe's and Synchrony Bank were performing well financially despite the government's prior investigation into Synchrony Bank's fraudulent practices, which resulted in a $225 million settlement.  He also contended that the $650,000 was a "drop in the bucket" compared to $225 million at issue with Synchrony Bank, yet Synchrony Bank was not prosecuted, giving rise to a disparity in prosecution.  The district court responded that, while those people should have been prosecuted,

Moore, who stole money from such people, should not get a different sentence as a result. The district court stated that the reason it was considering an above-Guidelines sentence was that Moore lied about his name before two federal judges and a federal probation officer. The district court also stated that there were 103 victims, which the Sentencing Guidelines adequately covered, and that he did not have a horrendous record. Moore responded that the report from his interview with pretrial services indicated that they knew he had used the name Andre Moore at some point and that the Guidelines accounted for him identifying himself as Bookard in the initial appearance. The district court stated that the Guidelines were not fully taking into account that he had lied to two federal judges. Moore responded that the statement at his initial appearance was unacceptable, which was accounted for in the enhancement, and that Moore's counsel had not had enough time to speak to Moore before the statement at the pretrial release hearing.

The government responded that Moore had not committed a simple error but lied three times, which would equal a six-level enhancement if the Guidelines allowed the instances of obstructions to stack, and that it was not simple to figure out Moore's real identity, given the length of time, the statements made in his jail calls, and the use of a fake Social Security number. The government also argued that Moore deliberately misrepresented his identity three times because he wanted to continue his fraudulent identity, deceive the court, and get out of jail. The government also

noted that Moore failed to mention in his allocution the harm Bookard faced, which was not accounted for in the Guidelines, as Bookard was not included in the 106 victims. Next, the government argued that, as to the pandemic, the PSI indicated that he committed fraud through May 2020, including in a three-week period in April 2020, and that the district court should not consider the immigration consequences because it was unclear what those consequences would be. The government also contended that, while Moore sat down with the agents and accepted responsibility, his cooperation did not go any further and that he denied knowing a person caught on video with Moore at Lowe's, who was a relative. The government also contended that Moore did not cooperate against anyone else who helped him sell or purchase the $650,000 in materials and that he was arrested in a Bentley likely purchased from those proceeds.

The district court stated that it thought an above-Guidelines sentence would be appropriate and asked if Moore wanted more time before proceeding. Moore stated that he would like to continue the sentencing at a later date to speak further with his counsel.

At the continuation of the sentencing hearing, Moore argued that the statutes to which he pleaded guilty and the Guidelines adequately considered all the issues related to his identity theft and his being less than forthcoming with the courts, considering the two-year mandatory sentence as to Count Two would run consecutively and he received the two-level enhancement for

obstruction. He also argued that, while he was not excusing his misrepresentations, his statement at his initial appearance was un-counseled and that the district court should impose a within-guide-line sentence. He also contended that, after several weeks, he man-aged to meet with his counsel, correct the issue of his identity, plead guilty, and do what was expected.

Moore provided additional allocution, stating that, during his first misrepresentation, he was chained with other inmates in front of a screen and responded as Bookard, as it was the name un-der which he was booked and the attorney at the hearing instructed him to do so. He stated that it was not his intention to lie or de-ceive the judge and that, before the second misrepresentation, he had been in jail for several weeks before speaking to his counsel on a non-privileged call and thought that he could not tell anyone his true name until meeting his counsel in person. Upon questioning by the district court, Moore stated that, before his arrest, he rented vacation rentals until the Zika virus destroyed tourism in Miami and he lost his home. The district court confirmed with Moore that his offense conduct lasted nine or ten months, that he sold the things he purchased using the victims' PII online, and that he ac-quired the PII online in part from the dark web.

The government responded that Moore was attempting to mislead the court, considering, on top of the two statements before the magistrate judges, he spent months identifying himself as Bookard on jail calls and telling people not to say his name. The government also argued that Moore's counsel did not know his

real name and that it took between June 2020 and May 2021 to fig-
ure out his real identity.  The government also contended that it
believed Moore had been working with another person, who was
seen on video in Lowe's next to Moore, and that, considering
Moore said he did not know the individual, he did not cooperate
fully and did not provide truthful information.  Through counsel,
Moore replied the government knew of Moore's identity by the
time of his proffer in March 2021 and that Moore told the agents
that the person in the video was his cousin, who was not involved
in the fraud.  He also argued that he was not denying that he main-
tained that he was Bookard for far longer than he should have.  The
government responded that, while Moore identified his cousin in
the video, he denied his cousin's involvement despite the use of his
cousin's Amazon account to sell the products.  Moore replied that
his use of the Amazon account for illegitimate purposes was un-
known to his cousin.

The district court recalculated the guideline range as 37 to
46 months' imprisonment as to Count One with 2 consecutive
years' imprisonment as to Count Two.  The district court noted
that the parties had made statements and stated that it had re-
viewed the PSI and all other submissions from the government and
Moore.  The district court imposed 3 years total of supervised re-
lease and $650,145.03 in restitution.  The district court stated that
it had considered the 18 U.S.C. § 3553(a) factors and that the sen-
tence was sufficient but not greater than necessary for the purposes
of sentencing.  The district court found that there was theft of

$650,000 over a short 6-month period in a very systematic, intelligent, knowing, and deliberate way that involved over a hundred victims, who had to figure out how to fix their credit history. The district court also found that Bookard had written a letter stating how Moore had ruined his life and that Bookard would have to go through life contending with the difficulties caused by Moore's activities. The district court found further that $43,000 of the theft occurred during a 3-week period in April 2020 during the pandemic, when people were sheltering at home. Additionally, the district court found that, while Moore did not give a fake name overtly to the courts, he remained silent when Bookard's name was called and perpetuated that lie in his jail calls.

Next, the district court found that the Sentencing Guidelines did not fully capture all the activities it mentioned and that, to deter this type of conduct, it was imposing a sentence above the Guidelines range, although it did not think Moore deserved to be "maxed out" at ten years. Accordingly, the district court sentenced Moore to 72 months' imprisonment as to Count One and 24 months' of imprisonment as to Count Two, to be conserved consecutively, for a total of 96 months' imprisonment. Moore reaffirmed his previous objections and objected to the sentence as procedurally and substantively unreasonable. In its statement of reasons, the district court indicated that it imposed a sentence outside the Sentencing Guidelines system, i.e., above the Guidelines range, based on the nature and circumstances of the offense, including the victim

impact, and the need to afford adequate deterrence to criminal conduct.

This appeal ensued.

## II.

We review the substantive reasonableness of a sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). We consider whether a sentence is substantively unreasonable under the totality of the circumstances and in light of the § 3553(a) factors. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). The district court must evaluate all of the § 3553(a) factors, but the weight accorded to each factor is within the sound discretion of the district court. *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1272–73 (11th Cir. 2014). The party challenging the sentence bears the burden to show that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). We thus will not reverse a sentence unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013) (quoting *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009)). The district court's imposition of a sentence well below the statutory maximum penalty is an indicator of reasonableness. *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).

The § 3553(a) factors that the district court is to consider include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense as well as to afford specific and general deterrence; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentences disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.

The justification for a variance "must be 'sufficiently compelling to support the degree of the variance.'" *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "The sentencing court must give 'serious consideration' to the extent of any departure from the guidelines, and must offer 'sufficient justifications' for its conclusion that an unusually harsh or light sentence is appropriate." *Id.* at 1186 (quoting *Gall*, 552 U.S. at 46). We do not presume that a sentence outside of the guideline range is unreasonable and give deference to the district court's decision that the § 3553(a) factors support its chosen sentence. *Id.* at 1187. Even if a particular factor is already accounted for by the Guidelines, district courts maintain discretion to consider the factor in deciding whether a variance is warranted. *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020).

### III.

Here, we conclude that Moore's above-Guidelines sentence was substantively reasonable.  First, the 72-month sentence as to Count One was well below the statutory maximum penalty of 120 months, which is an indicator of reasonableness, *Croteau*, 819 F.3d at 1310, and the consecutive 24-month sentence as to Count Two was mandatory, 18 U.S.C. § 1028A(a)(1).

The district court also stated that it considered the § 3553(a) factors and gave a sufficiently compelling justification for the upward variance, including the impact on the victims and the need to afford deterrence.  Indeed, in imposing the sentence, the court explained that: there was a theft of $650,000 over a short 6-month period in a very systematic, intelligent, knowing, and deliberate way that involved over a hundred victims; that Bookard would have to go through life contending with the difficulties caused by Moore's activities; that $43,000 of the theft occurred during a 3-week period in April 2020 during the pandemic; and that he remained silent when Bookard's name was called in court and perpetuated that lie in his jail calls.  The court further explained that several factors were not fully accounted for by the Guidelines range, i.e., the amount of victims, the injury to Bookard as a result of Moore stealing Bookard's identity, and the number of times he misrepresented his identity to federal judges and a federal probation officer.  And the court also stated it had explicitly considered Moore's various mitigating factors, such as his acceptance of

21-13285          Opinion of the Court          19

responsibility by pleading guilty and cooperating with the government and the immigration consequences.

Accordingly, we affirm Moore's sentence.

**AFFIRMED.**