[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-14215

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RYAN FELTON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00347-JPB-JSA-1

————————————————

Before WILSON, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant appeals the 70-month sentence he received after pleading guilty to numerous counts of wire fraud, money laundering, and securities fraud related to two cryptocurrency schemes that resulted in investor losses of over two million dollars. Defendant argues the sentence is procedurally and substantively unreasonable because the district court erred by applying a sophisticated means enhancement and declining to adjust his offense level for acceptance of responsibility. After careful review, we reject Defendant's arguments and **AFFIRM** his sentence.

## BACKGROUND

Defendant was charged in a November 2021 superseding indictment with sixteen counts of wire fraud in violation of 18 U.S.C. § 1343, ten counts of money laundering in violation of 18 U.S.C. § 1957, and two counts of securities fraud in violation of 15 U.S.C. §§ 78j and 78ff. He pled not guilty, and a jury trial commenced in July 2022. After three days of trial, however, he reversed course and pled guilty to most of the charges asserted against him.

Based on the factual proffer submitted in support of the plea and the undisputed facts in the presentence report ("PSR"), the charges stemmed from two cryptocurrency schemes Defendant conducted between August 2017 and August 2018 involving projects known as FLik and CoinSpark. Investors lost a total of approximately $2.5 million in the two schemes.

Defendant founded FLiK with the purported purpose of funding and creating a platform to stream television and film projects.[1] He then promoted the sale of "FLiK tokens"—a type of cryptocurrency—to investors in various online platforms and in an initial coin offering ("ICO").[2] In these promotional materials, Defendant misrepresented that FLiK investment proceeds would be used to fund television and film projects, that celebrities and other well-known figures were involved in the project, that Defendant was in discussion with major film studios to obtain content for FLiK, and that the United States military had agreed to carry FLiK as a streaming platform available to nearly two million service members. Defendant admitted that these representations were false, and expert testimony established that most if not all the proceeds raised from the purchase of FLiK tokens were diverted to Defendant's personal use. Defendant also represented that FLiK tokens would appreciate, and he encouraged investors to wait until the tokens reached a peak resale price before selling them. Those representations were part of Defendant's scheme to artificially inflate or "pump" the value of FLiK cryptocurrency so he could later sell or "dump" his own holdings of the currency at an elevated price.

---

[1] Defendant was working as a television and film producer when he created FLiK.

[2] An ICO is a way to raise investment capital by offering to issue cryptocurrency coins or tokens to investors. *See* https://www.sec.gov/securities-topics/ICO. The SEC advises on its website that the digital assets offered for sale in an ICO "bring increased risk of fraud and manipulation because the markets for these assets are less regulated than traditional capital markets."

In addition to FLiK, Defendant created another cryptocurrency called CoinSpark, which he promoted and sold to investors online and in a separate ICO. Defendant falsely represented in the promotional materials for CoinSpark that investors would receive a dividend, that CoinSpark's financial statements would be audited, and that any unsold tokens would be disposed of to keep the price and demand for CoinSpark currency high. He also made other misrepresentations in connection to CoinSpark, including spreading false information in an article he published under a fake name. As with the FLiK scheme, Defendant diverted most of the CoinSpark investment proceeds to his personal use via a convoluted process of converting his CoinSpark holdings into dollars and transferring those funds into multiple and various types of cryptocurrency and financial accounts. Defendant used the funds generated from both CoinSpark and FLiK to buy luxury goods, including a home, vehicles, and jewelry.

The PSR assigned Defendant a base offense level of 7 for his wire and securities fraud counts pursuant to USSG § 2B1.1(a)(1). It added 16 levels under USSG § 2B1.1(b)(1)(I) because the loss caused by the offense exceeded $1.5 million but was less than $3.5 million, 2 levels under USSG § 2B1.1(b)(2)(A)(ii) because the offense was committed through mass marketing, and 2 levels under USSG § 2B1.1(b)(10)(C) because the offense involved sophisticated means. Explaining the sophisticated means enhancement, the PSR noted that Defendant's offense involved creating two unique cryptocurrencies, promoting the sale of those cryptocurrencies by means of repeated and elaborate misrepresentations to investors,

and orchestrating a pump and dump scheme with respect to the currencies that enabled him to sell his holdings of them at an inflated price.  Adjusting for the enhancements, the PSR calculated Defendant's offense level as 27 for his wire and securities fraud counts.

The PSR assigned Defendant a base offense level of 27 for his money laundering counts, per the guidelines instruction to apply the base offense level for the underlying offense from which the laundered funds were derived.  It added 1 level under USSG § 2S1.1(b)(2)(A) because Defendant was convicted under 18 U.S.C. § 1957, resulting in an adjusted offense level of 28. Grouping all of Defendant's counts as instructed by USSG § 3D1.2(c), the PSR calculated Defendant's adjusted offense level as 28.  It declined to apply an acceptance of responsibility adjustment under USSG § 3E1.1, explaining that despite his guilty plea, Defendant had put the Government to its burden of proof by "denying the essential factual elements of guilt for three days of a [j]ury trial."

The PSR assigned Defendant a criminal history score of I after describing various convictions for minor driving offenses in addition to two convictions involving theft and false statements.  It listed several additional charges involving domestic violence, theft by receiving stolen property, criminal impersonation, and contempt of court, but those charges were dismissed and did not factor into Defendant's criminal history score.  Based on a criminal history score of I and a total offense level of 28, the PSR calculated Defendant's guidelines range as 78 to 97 months.  It noted that the

statutory maximum on the wire fraud and money laundering counts was 20 years, that the statutory maximum on the securities fraud counts was 10 years, and that none of the counts required a mandatory minimum.

Defendant objected to the PSR on two grounds that are relevant here.[3] First, he argued that the sophisticated means enhancement the PSR recommended applying under USSG § 2B1.1(b)(10)(C) was not warranted, and that his adjusted offense level should thus be 26 instead of 28. Second, he argued he was entitled to a 2-level reduction in his offense level pursuant to USSG § 3E1.1 for acceptance of responsibility. Together, these adjustments would have resulted in an offense level of 24 and a recommended guidelines sentence of 51 to 63 months.

The district court rejected both of Defendant's sentencing arguments. Noting that the relevant guideline defines sophisticated means as "especially complex or especially intricate offense conduct," the court found the Government had shown such conduct "in spades" in this case. In support of its finding, the court emphasized that Defendant had used his expertise in digital assets and cryptocurrency platforms, as well as his specialized knowledge about managing various types of accounts and creating companies—including companies outside the United States in lucrative foreign markets—to commit the offenses underlying his convictions. The court explained further that the numerous

---

[3] Defendant also objected to the amount of restitution recommended in the PSR, but that objection is not relevant to this appeal.

misrepresentations Defendant had used to "pump and dump" both cryptocurrencies were indicative of a complex and sophisticated scheme.

As to acceptance of responsibility, the court found that Defendant had not shown a downward adjustment was warranted. The court stressed the delay in Defendant's decision to plead guilty, coming as it did in the middle of a complex trial and after the Government had secured the presence of multiple international witnesses and a cryptocurrency expert. It also noted that Defendant had not demonstrated any of the other indicators of acceptance of responsibility set out in the guidelines, such as voluntarily terminating or withdrawing from the offense conduct, offering to pay restitution, surrendering to the authorities, assisting the authorities, or undertaking post-offense rehabilitation efforts.

After ruling on the objections, the district court adopted the findings and recommendations in the PSR, including its calculation of Defendant's total offense level of 28 and his guidelines range of 78 to 97 months. The court subsequently heard arguments from the parties as to their recommendations for a reasonable sentence considering the 18 U.S.C. § 3553(a) factors. Defendant asked the court to vary down and sentence him to 46 months, and the Government asked for a sentence in the middle of the guidelines range. Ultimately, the court varied down slightly and sentenced Defendant to 70 months as to each count of conviction, to be served concurrently and to be followed by a 3-year term of supervised release. The court stated that this sentence was made in view of the

§ 3553(a) factors, including the nature and circumstance of the of-
fense and the need to afford adequate deterrence and protect the
public, among other factors, and that it was "sufficient but not
greater than necessary to comply with the directives of [§] 3553(a)."
It affirmed that its sentence would have been the same regardless
of its ruling on the disputed guidelines issues it resolved in favor of
the Government.

Defendant appeals his sentence, arguing that it is procedur-
ally and substantively unreasonable because the district court erred
when it applied the sophisticated means enhancement and when it
declined to adjust his offense level for acceptance of responsibility.
As discussed below, we conclude that the district court did not err
in its sophisticated means analysis or in its refusal to apply a deduc-
tion for acceptance of responsibility, and that Defendant's sentence
is otherwise procedurally and substantively reasonable. Further,
and even assuming the court erred in either regard, it is clear any
error was harmless. Accordingly, we affirm Defendant's 70-month
sentence.

## DISCUSSION

### I.    Standard of Review

We use a two-step process to review the reasonableness of a
sentence imposed by the district court. *See United States v. Cubero*,
754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the
sentence is procedurally sound. *See id.* Assuming it is, we then
examine whether the sentence is substantively reasonable given
the totality of the circumstances and the sentencing factors set out

in 18 U.S.C. § 3553(a).[4]  *Id.*  At both steps of the process, the party challenging the sentence bears the burden of showing it is unreasonable.  *See United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

When engaging in the above two-step analysis, we review de novo any purely legal questions regarding the guidelines.  *See Cubero*, 754 F.3d at 892.  On the other hand, we review for clear error the district court's factual findings, including its findings concerning whether the defendant used sophisticated means to commit an offense.  *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).  Likewise, we review for clear error the district court's "determination of a defendant's acceptance of responsibility." *United States v. Andres*, 960 F.3d 1310, 1318 (11th Cir. 2020).  Clear error review "is deferential."  *Ghertler*, 605 F.3d at 1267 (quotation marks omitted).  It requires us to leave the district court's findings undisturbed unless we are "left with a definite and firm conviction that a mistake has been committed."  *Id.* (citation and quotation marks omitted).

---

[4] The § 3553(a) factors include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (3) the need for deterrence, (4) the need to protect the public, (5) the need to provide the defendant with needed education or vocational training or medical care, (6) the kinds of sentences available, (7) the sentencing guidelines range, (8) pertinent policy statements of the sentencing commission, (9) the need to avoid unwarranted sentencing disparities, and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

II.    **Procedural and Substantive Reasonableness**

A.    Procedural Reasonableness

As noted, Defendant argues on appeal that the district court committed procedural error by applying a 2-level sophisticated means enhancement pursuant to USSG § 2B1.1(b)(10)(C). The sophisticated means enhancement applies when an offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." USSG § 2B1.1(b)(10)(C). "Sophisticated means" in this context is defined to mean "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1, Application Note at 9(B). The guidelines instruct that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts . . . ordinarily indicates sophisticated means." *Id.* But that is just one example of conduct that qualifies. *See United States v. Feaster*, 798 F.3d 1374, 1380 (11th Cir. 2015). Other facts can indicate sufficiently complex or intricate conduct to support the enhancement, for example a defendant's use of inside information and targeted, repetitive acts over a long period of time to execute and conceal the fraud. *See id.* at 1382.

Defendant acknowledges that his offense conduct was "seemingly complex" because it involved cryptocurrency. Nevertheless, he argues it did not "rise to the level of sophistication" contemplated by § 2B1.1(b)(10)(C) because it was no more sophisticated than what would be required to execute any cryptocurrency

scheme.  We are unpersuaded.  The guidelines do not require an extra level of complexity to support a sophisticated means enhancement in cases involving inherently sophisticated offenses such as the cryptocurrency scheme Defendant orchestrated here. *See* USSG § 2B1.1(b)(10)(C) and Application Note 9(B).  The governing analysis is instead whether the offense conduct is "especially complex or especially intricate." *Id.*

As the district court found, there are numerous indicators of such complexity and intricacy here.  Defendant created two entities that for all intents and purposes were fictitious, and he made numerous and repeated misrepresentations concerning those entities over the course of nearly a year that were well-planned and targeted to extract funds from investors.  Some of these misrepresentations were made in furtherance of a "pump and dump" scheme whereby Defendant persuaded investors to refrain from selling FLiK and CoinSpark cryptocurrencies so he could later sell his own holdings of these currencies at artificially inflated prices.  Throughout the scheme, Defendant used complex transfers of digital and traditional assets through multiple and various types of online platforms and accounts to divert nearly all the investment funds to his personal use and to conceal the fraud.  During that time, the scheme resulted in a loss of approximately $2.5 million.

Given the above facts, we are not "left with a definite and firm conviction" that the district court erred when it applied the sophisticated means enhancement in this case.  *See Ghertler*, 605 F.3d at 1267 (quotation marks and citation omitted).  On the

contrary, we agree with the district court that Defendant's offense conduct falls squarely within the definition of sophisticated means as used in the guidelines and as applied by this Court. *See Feaster*, 798 F.3d at 1382 (noting that the defendant had taken advantage of her inside information to conduct a fraud scheme through varied and repeated affirmative acts of concealment over a two year period of time, indicating sophistication); *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011) (upholding a sophisticated means enhancement where the defendants gained access to their university registrar's password protected grading system via a scheme that involved a "great deal of planning and inside information" and "multiple, repetitive . . . steps to deceive and exploit" the system (quotation marks omitted)); *United States v. Bane*, 720 F.3d 818, 826–27 (11th Cir. 2013) (holding there was sufficient support for a sophisticated means enhancement where the defendant's healthcare fraud scheme required the use of multiple corporate entities and an intricate daily paper trail to conceal).

Defendant also argues the district court procedurally erred by refusing to grant a reduction for acceptance of responsibility under USSG § 3E1.1. The guidelines call for a 2-level reduction when the defendant "clearly demonstrates acceptance of responsibility for his offense" and an additional 1-level reduction when the defendant notifies the Government of his intention to plead guilty in time to avoid a trial. *See* USSG § 3E1.1. Defendant concedes he is not entitled to a 3-level reduction, but he argues that his guilty plea on the third day of trial and the fact that he admitted his conduct

without minimizing or trying to mitigate it warrants a 2-level reduction.

Again, we disagree. The guidelines make clear that a defendant is not entitled to a reduction for acceptance of responsibility as a matter of right simply because he pleads guilty. *See* USSG § 3E1.1, Application Note 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). Instead, the defendant must "clearly demonstrate" his acceptance of responsibility. USSG § 3E1.1(a). Yet, a guilty plea after three days of a jury trial during which the Government presented most of its case in chief is essentially all Defendant offers in support of his request for the reduction here. *See United States v. Wright*, 862 F.3d 1265, 1279 (11th Cir. 2017) (noting that a defendant must present more than just a guilty plea to meet his burden of establishing acceptance of responsibility).

As the district court noted, all the other indicators of acceptance of responsibility set out in the guidelines are lacking in Defendant's case. Specifically, Defendant did not voluntarily withdraw from his conduct, pay restitution before being adjudicated guilty, voluntarily surrender to the authorities, assist the authorities, or undertake any significant post-offense rehabilitative efforts. *See* USSG § 3E1.1, Application Note 1. Furthermore, while the entry of a guilty plea *prior to* commencement of trial combined with a truthful admission of the conduct comprising the offense of conviction is significant evidence of acceptance of responsibility, Defendant did not plead guilty until after three days of a jury trial that

necessitated extensive preparation by the Government. The lack of timeliness in Defendant's conduct manifesting acceptance of responsibility is another factor that weighs against an adjustment here. *See id.*, Application Note 1(H).

The district court correctly recognized that Defendant's decision to go to trial did not per se preclude him from receiving an acceptance of responsibility adjustment. *See United States v. Whyte*, 928 F.3d 1317, 1335 (11th Cir. 2019) ("The reduction may be available, in a rare case, even when the defendant proceeds to trial[.]" (quotation marks omitted)). But it did not err—and it certainly did not clearly err—when it determined that given the timing of Defendant's plea and the lack of any other indicators that Defendant had accepted responsibility, an adjustment pursuant to USSG § 3E1.1 was not warranted in this case. *See United States v. Williams*, 408 F.3d 745, 757 (11th Cir. 2005) (noting that the sentencing judge's determination as to acceptance of responsibility "is entitled to great deference on review" because that judge is "in a unique position to evaluate" the issue. (quotation marks omitted)).

B.    Substantive Reasonableness

Defendant's substantive reasonableness argument is based on the same alleged procedural errors discussed above, and thus fails for the same reasons. We note further that there is no other basis upon which to overturn Defendant's sentence as substantively unreasonable. We will overturn a sentence as substantively unreasonable only if the district court has committed "a clear error of judgment" in weighing the § 3553(a) sentencing factors and

applying them to the facts and circumstances of the case. *See United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010). Such an error may occur if the district court fails to consider relevant factors, gives significant weight to an improper or irrelevant factor, or weighs the factors unreasonably. *Id.* at 1189. However, this Court has emphasized that the "decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation marks and citation omitted).

The record here reflects that the district court conducted an individualized assessment of the facts and the § 3553(a) factors at sentencing, balanced the competing considerations—specifically weighing the nature and circumstances of Defendant's offense, the need to protect the public from schemes like Defendant's, and deterrence considerations, among other factors—and ultimately determined that a below guidelines sentence of 70 months was warranted by the specific facts of this case. No error appears in the record that would warrant a reversal of the sentence on substantive reasonableness grounds.

## III.   Harmless Error

Although we conclude that the district court did not err by imposing the sophisticated means enhancement or declining to reduce Defendant's offense level for acceptance of responsibility, we note that any such error would have been harmless. The court explained at sentencing that it would have imposed a 70-month sentence in Defendant's case regardless of how it resolved the

guidelines disputes about the sophisticated means enhancement and acceptance of responsibility adjustment. Thus, even assuming the court erred in either regard, Defendant's sentence is due to be affirmed unless he can show that it would have been substantively unreasonable under the lower guidelines range that would have applied if his objections had been sustained. *See United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006) (holding that the court need not decide a guidelines enhancement issue if the trial court makes clear it made no difference to the ultimate sentence imposed and the sentence is substantively reasonable under the lower guidelines range advocated by the defendant). Defendant has not made the required showing here.

If the district court had sustained both of Defendant's objections, his offense level would have been lowered by 4 levels to 24, resulting in a guidelines range of 51 to 63 months. Defendant does not offer any argument on appeal as to why a 70-month sentence would be substantively unreasonable under the slightly lower 51 to 63-month guidelines range that would apply if his sentencing objections had been sustained, and there is no support for such an argument in the record. Again, a sentence is substantively unreasonable only if the district court has committed a clear error, such as failing to consider relevant sentencing factors, giving significant weight to an improper factor, or weighing the factors unreasonably. *See Irey*, 612 F.3d at 1189. As discussed above, the district court did not commit any of those errors here. It carefully weighed the relevant § 3553(a) factors, applied the factors to the agreed upon facts in the case, and thoroughly explained its decision to impose a

70-month sentence as "sufficient but not greater than necessary to comply with the directives of [§] 3553(a)" regardless of how Defendant's sentencing objections were resolved. Furthermore, the 70-month sentence is well below the statutory maximum twenty-year penalty available on Defendant's wire fraud and money laundering counts and the ten-year penalty available on his securities fraud counts, another indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Assuming the 51 to 63-month guidelines range applied, the district court's sentence of 70 months would be a slight variance upward. This Court does not presume that a sentence outside the guidelines range is unreasonable, however. *See United States v. Oudomsine*, 57 F.4th 1262, 1267 (11th Cir. 2023). Rather, a district court has "considerable discretion" in weighing the § 3553(a) factors and deciding whether they "justify a variance and the extent of one that is appropriate." *Id.* at 1266 (quotation marks omitted). The district court acted within its discretion here when it imposed a 70-month sentence based on the seriousness of Defendant's offense, as well as the importance of imposing just punishment, protecting the public from these types of schemes, and affording adequate deterrence, among other factors. *See id.* That is true whether the guidelines range is 78 to 97 months, which the court found to require a slight variance downward, or 51 to 63 months, which the court indicated at sentencing would require a slight variance upward. For this additional reason, Defendant's sentence must be affirmed.

18                    Opinion of the Court                    22-14215

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's sentence is **AFFIRMED**.